81 A.3d 816

**Beverly ROETHLEIN and Robert Albanese, on Behalf of Themselves and all others Similarly Situated and Jerry Konidaris and Theodora G. Konidaris, Appellees**

v.

**PORTNOFF LAW ASSOCIATES, LTD. and Michelle R. Portnoff, Esquire, Appellants.**

Supreme Court of Pennsylvania.

Argued March 6, 2013.

Decided Nov. 20, 2013.

1

2 

Kimberly Marie Colonna, Esq., Helen Louise Gemmill, Esq., McNees, Wallace & Nurick, LLC, Harrisburg, for Portnoff Law Associates, Ltd. and Michelle R. Portnoff.

Michael Gerard McCabe, Esq., Goehring, Rutter & Boehm, Pittsburgh, Daniel Donahue Regan, Esq., Andrew Francis Szefi, Esq., Pittsburgh, Ira Weiss, Esq., Pittsburgh, for amicus curiae County of Allegheny, City of Pittsburgh and School District of Pittsburgh, amicus curiae.

Noah I. Axler, Esq., Philadelphia, for Beverly Roethlein and Robert Albanese.

Bernard S. Rubb, Esq., Sewickley, for Jerry Konidaris and Theodora G. Konidaris.

Donald F. Driscoll, Esq., Community Justice Project, Pittsburgh, for Community Justice Project, amicus curiae.

Michael P. Malakoff, Esq., Pittsburgh, for ACTION United, amicus curiae.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice TODD.

In the instant case, we consider whether Pennsylvania's

Loan Interest and Protection Law ("Act 6" or "the Act")[1] provides taxpayers with a cause of action to challenge costs imposed for the collection of delinquent taxes or to seek damages and attorneys' fees for improperly-imposed costs. We also consider whether Section 7103 of the Municipal Claims and Tax Liens Act ("MCTLA")[2] authorizes a municipality to recover the administrative costs it incurs in collecting delinquent taxes. For the reasons that follow, we hold that Act 6 does not provide a cause of action for claims which do not involve the loan or use of money. We further conclude Section 7103 of the MCTLA allows a municipality to recover fees it pays to a third-party tax collector for the purpose of collecting delinquent taxes. In light of our conclusions, we reverse the decision of the Commonwealth Court, and remand the matter to the Commonwealth Court for further proceedings consistent with this opinion.

 Portnoff Law Associates, Ltd., and Michelle Portnoff, Esquire, the sole shareholder thereof (hereinafter "Portnoff"), serves as a private tax collector for various municipalities and school districts (collectively, "municipalities") in the Commonwealth pursuant to the MCTLA. According to the trial court's findings of fact, between November 2000 and November 2002, Portnoff had contracts with 22 municipalities to represent them in the collection of delinquent real estate taxes. The contracts, which were prepared by Portnoff and submitted to the municipalities for execution, provided that Portnoff would be compensated for her collections by charging her legal fees to the delinquent taxpayer. Specifically, taxpayers would be charged $150 for the opening of a file and preparation of a demand letter; $150 for the filing of a lien and preparation of a second letter; and $150 for preparation and filing of a writ of *scire facias*.[3] The contracts further

1. Act of Jan. 30, 1974, P.L. 13, No. 6, as amended 41 P.S. §§ 101–605.

2. 53 P.S. §§ 7101–7505 (as amended by Act of August 14, 2003, P.L. 83, No. 29 § 1, retroactive effective Jan. 1, 1996).

3. A writ of *scire facias* is a statutory action *in rem;* the term *scire facias* refers to both the writ and the proceeding. *See Pentlong Corp. v. GLS Capital, Inc.,* 573 Pa. 34, 44 n. 11, 820 A.2d 1240, 1246 n. 11 (Pa.2003),

required the municipalities to enact an ordinance or resolution authorizing Portnoff to impose legal fees upon the delinquent taxpayer.

For each delinquent account, the municipalities sent Portnoff a file that contained a "placement amount." The placement amount included the delinquent real estate tax, which was referred to as the "face amount", as well as a penalty imposed by the municipality. Portnoff would then add to the placement amount a $35 fee, which she labeled an "administrative cost," to cover the costs of opening a file and sending, by certified mail, the initial notice of delinquency on the municipalities' letterhead. The administrative cost plus the placement amount was referred to by Portnoff as "principal." From the time a file was sent to her for collection, Portnoff began charging 10% interest on the principal.

In November 2002, Appellee Beverly Roethlein, a taxpayer residing in Allentown, Pennsylvania, filed a class action complaint against Portnoff and one of her employees seeking recovery for unjust enrichment and violations of Section 502 of Act 6.[4] Section 502, entitled "Usury and excess charges recoverable," provides:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may

*superseded by statute as stated in Konidaris v. Portnoff Law Assoc.*, 598 Pa. 55, 953 A.2d 1231 (Pa.2008). A writ of *scire facias* is ordinarily requested by a property owner to give him the opportunity to show why a lienholder should not be allowed to execute on his property. *Pentlong*, 820 A.2d at 1246. After the lienholder issues the writ, the owner may file an affidavit, pursuant to 53 P.S. § 7182, raising defenses to the lien, such as actual payment of taxes, a defective claim or lien, fraud, or lack of process or notice. *Id.*

4. In addition to counts alleging unjust enrichment and violations of Act 6, Count 1 of the Complaint alleged violations of the Consumer Protection Law ("CPL"), 73 P.S. §§ 201–1 *et seq.*, and the Pennsylvania Fair Credit Extension Uniformity Act ("PFCEU"), 73 P.S. §§ 2270.1 *et seq.* However, it does not appear that the trial court's award was based on a finding of violations of these statutes, and, indeed, Portnoff did not raise any issues regarding the CPL and PFCEU on appeal to the Commonwealth Court.

recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges: Provided, [t]hat no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within four years from and after the time of such payment. Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract.

41 P.S. § 502.

The complaint alleged, *inter alia*, that, during the class period of November 27, 2000 through November 26, 2002, Portnoff collected from Roethlein and others ("Taxpayers") [5] fees and charges in excess of those authorized by law, namely, the administrative cost fees and the interest thereon. In her answer to the complaint, Portnoff maintained that the $35 administrative cost fee was added to the delinquent principal claim amount only when the municipality opted to recoup the fee from the delinquent taxpayer; she further stated that she did not retain any part of the fee collected from Taxpayers, but remitted the full amount to the municipality. On July 8, 2009, the trial court issued an award in favor of Taxpayers in the amount of $1,058,697.10, which represented compensatory damages based on violations of Act 6 and unjust enrichment, plus statutory interest and attorneys' fees.[6] On November 6, 2009, the court granted Taxpayers' motion for attorneys' fees and expenses in the amount of $1,267,386.25 and $20,923.11,

---

5. The additional named Appellees, Jerry Konidaris and Theodora Koni-daris, reside in McKeesport, Pennsylvania. Additional named Appellee, Robert Albanese, resides Lower Mount Bethel Township, Pennsylvania.

6. The trial court initially entered an order in favor of Taxpayers in the amount of $5,213,670.08 on March 11, 2008. Thereafter, on August 18, 2008, this Court held that the 2003 retroactive amendment to the MCTLA, which authorized municipalities to recover their attorneys' fees and costs of collection from their delinquent taxpayers, was constitutional. *See Konidaris, supra* note 3. In accordance with our holding, the trial court granted, in part, Portnoff's pending post-trial motions and modified the award.

respectively. Portnoff appealed both the July 8 and November 6 orders to the Commonwealth Court.

On appeal, the Commonwealth Court affirmed. *Roethlein v. Portnoff Law Assoc., Ltd.*, 25 A.3d 1274 (Pa.Cmwlth.2011). Relevant to this appeal, and as discussed in detail below, the court first rejected Portnoff's argument that Act 6 cannot be used as a basis to recover charges paid in connection with delinquent tax payments. Second, the Court concluded the language of Section 504, which provides that "[a]ny person affected by a violation of the act shall have the substantive right to bring an action on behalf of himself individually," 41 P.S. § 504, "does not preclude such individuals from complaining collectively in the form of a class action." 25 A.3d at 1278. Finally, the court determined that the expenses incurred by Portnoff in providing the initial notice to Taxpayers on the municipalities' letterhead were not costs that could be recouped under the MCTLA.

The Honorable Mary Hannah Leavitt authored a dissenting opinion, wherein she concluded that "Act 6, a usury statute, has zero application to a municipality's collection of delinquent taxes." *Id.* at 1282. In support of her position, Judge Leavitt first explained that Section 504, not Section 502, creates a cause of action for a violation of Act 6, and that Section 502 simply specifies the damages available under the Act. As "nothing in Act 6 makes it unlawful to over-charge a taxpayer for costs associated with the collection of his delinquent taxes," Judge Leavitt opined there was no violation of Act 6 in the instant case. *Id.* at 1285. Judge Leavitt stressed that "the operative language in Section 502 is 'for the loan or use of money,'" and that Taxpayers disregarded that language. *Id.* Further, Judge Leavitt suggested that an action for overpayment of tax collection charges "cannot be reconciled with Section 503 of Act 6," because Section 503 authorizes a borrower or debtor to recover attorneys' fees, and a delinquent taxpayer is neither a borrower nor a debtor. *Id.* Finally, Judge Leavitt noted that the MCTLA expressly authorizes the recovery by a municipality of a charge, expense, or fee incurred in its collection of delinquent taxes, provided they are

reasonable, and concluded Taxpayers "presented no evidence whatsoever to prove that the $35 charge was unreasonable." *Id.* at 1286.

Portnoff filed a petition for allowance of appeal with this Court, which we granted, limited to the following issues:

a. Did the Commonwealth Court err as a matter of law in holding that Pennsylvania's usury statute, [Act 6], provides a cause of action to challenge costs charged in the collection of delinquent taxes and to impose statutory penalties of treble damages and attorneys' fees, when the costs did not arise from a transaction involving the loan or use of money?

b. Did the Commonwealth Court err as a matter of law in allowing claims under [Act 6] to be pursued by way of a class action suit?

c. Did the Commonwealth [Court] err as a matter of law in ruling that amounts paid by a municipality to a third party tax collector in order to collect delinquent taxes were not "charges, expenses or fees" under the MCTLA which could be added to the delinquent taxes?

*Roethlein v. Portnoff Law Assoc., Ltd.,* 53 A.3d 1317 (Pa.2012) (order). As these issues raise questions of law, our standard of review is *de novo* and our scope of review is plenary. *Dechert LLP v. Commonwealth,* 606 Pa. 334, 340, 998 A.2d 575, 579 (2010).

We begin with Portnoff's argument that the Commonwealth Court erred in holding that Act 6 provides a separate cause of action by which delinquent taxpayers may recover administrative fees, as well as damages and attorneys' fees. Count II of Taxpayers' Complaint was brought pursuant to Section 502 (Usury and excess charges recoverable) and Section 503 (Reasonable attorney's fees recoverable) of the Act. As noted above, Section 502 provides, in part:

A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges

in a suit at law against the person who has collected such excess interest or charges

41 P.S. § 502. Section 503 provides, in part:

(a) If a borrower or debtor, including but not limited to a residential mortgage debtor, prevails in an action arising under this act, he shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution of such action, together with a reasonable amount for attorney's fee.

41 P.S. § 503.

Portnoff contends that the Commonwealth Court, in allowing Taxpayers to recover under Sections 502 and 503 of the Act, disregarded the plain language of the Act. Portnoff emphasizes that the Act is titled the "Loan Interest and Protection Law," observing that it specifically defines the types of charges that can be collected in transactions involving the loan or use of money, including "service charges" and "finance charges," but does not contain any language defining what is an "unlawful or excess charge" in any context other than that involving the loan or use of money. Moreover, Portnoff asserts that, based on the rules of statutory construction, the first sentence of Section 502 of the Act—"for the loan or use of money"—must be read to modify not just the term "interest," but also the word "charges." Portnoff additionally disputes Taxpayers' effort to characterize themselves as "debtors" under the Act, citing this Court's decision in *In re Moorehead's Estate*, 289 Pa. 542, 553, 137 A. 802, 806 (1927) (stating "a tax is not a debt").

Portnoff further asserts that the Commonwealth's construction of Act 6 ignores the legislative history of the Act, noting that Senate Bill 1255, which became Act 6, contained an introductory statement describing Act 6 as an act "regulating agreements for the loan or use of money." Portnoff's Brief at 26 (citing S.B. 1255, Gen. Assem. Sess. (Pa.1973–74)). Portnoff also refers to comments made on the Senate floor during the debate on Act 6, wherein one senator stressed that Act 6

was intended as a mortgage interest bill, designed to apply to claims involving the loan or use of money.[7]

Finally, Portnoff maintains that the Commonwealth Court's holding conflicts with other decisions regarding the applicability of Act 6, and offers that "[n]o Pennsylvania court has ever applied [Act 6] to any claims other than claims for recovery of interest or charges paid in connection with the loan or use of money." Portnoff's Brief at 28. Appellant cites, in particular, the Superior Court's decision in *In re Estate of John Francis Braun*, 437 Pa.Super. 372, 650 A.2d 73 (1994), and *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3rd Cir.2000).

Taxpayers, in response to Portnoff's arguments, emphasize that a court's objective in construing a statute is to ascertain and effectuate the intent of the General Assembly in enacting the statute, and that, when the words of a statute are clear and free from all ambiguity, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); *see Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006) (the best indication of the General Assembly's intent in enacting a statute may be found in its plain language). Taxpayers contend that the plain language of Section 502 allows a person to recover damages "(1) where the person has 'paid a *rate of interest for the loan or use of money* at a rate in excess of that provided for by this act or otherwise by law;' *or* (2) 'where the person has paid *charges* prohibited or in excess of those allowed by this act or otherwise by law.' "

7. Specifically, Portnoff quotes the following remarks by Senator Edward Zemprelli:

> Mr. President, I think it is important for me to say this. This bill was intended as a mortgage interest bill. At the same time that we studied this bill and went to great lengths in the Committee, we recognized that there is a need to do something about the fourteen statutes that deal with the lending of money in the Commonwealth of Pennsylvania. This was not intended to be an omnibus bill that addressed itself to every type of lending, it was intended to be a facet bill that addressed itself to one particular type of lending. It was actually something that needed to happen because of the emergencies of the situation.

Portnoff's Brief at 27 (quoting Pa. Senate Journal, January 15, 1974, p. 1334) (emphasis omitted).

Taxpayers' Brief at 14 (emphasis original). According to Taxpayers, because the meaning of Section 502 is plain, no further analysis is necessary, or permitted, and the legislative history of Section 502 is irrelevant.

Taxpayers further argue that the mere fact "that Pennsylvania's usury statute generally applies to contracts for the loan or use of money is insufficient to show that the 'charges' to which section 502 refers are limited to charges arising from a contract for the 'loan or use of money.'" *Id.* at 16. Along these lines, Taxpayers contend it is Portnoff's burden to cite case law that holds Section 502 should be interpreted to *exclude* charges that did not arise from the loan or use of money, rather than Taxpayers' burden to cite case law in which Act 6 has been held to apply to claims not involving the loan or use of money. Finally, Taxpayers maintain that the Third Circuit's decision in *Pollice, supra,* supports the trial court's interpretation of Section 502.

The Commonwealth Court's discussion of this issue is exceedingly brief. The court first noted that the title of Section 502 of Act 6 is "Usury and *excess charges* recoverable." 25 A.3d at 1278 (emphasis original). The court then explained:

> Section 502 of Act 6 specifically states: "A person who has paid ... *charges prohibited or in excess of those allowed by* ... *law* may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess ... charges...." (Emphasis added). By the plain language of the statute, this action is permitted.

*Id.* (omissions original). We disagree with the Commonwealth Court's determination that the plain language of Section 502 permits Taxpayers' action; indeed, we conclude the plain language prohibits the same.

When interpreting a statute, courts should read the sections of a statute together and construe them to give effect to all of the statute's provisions. 1 Pa.C.S.A. § 1921(a). In giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them

with reference to the context in which they appear. *Mishoe v. Erie Ins. Co.*, 573 Pa. 267, 272, 824 A.2d 1153, 1155 (2003). The Commonwealth Court, in interpreting Section 502 to allow a cause of action to recover charges not related to the loan or use of money, focused on the words "excess charges" without consideration of the other sections of the Act, or the context in which the words appear.

Nearly all of the definitions under Section 101 of the Act are defined in the context of mortgage loans. For example, the Act defines "Actual Settlement Costs" as including "[a] single service charge, which shall include any consideration paid by the residential mortgage debtor," and the service charge generally "shall not exceed one per cent of the original bona fide principal amount of the loan." 41 P.S. § 101. Actual settlement costs also include "[c]harges and fees necessary for or related to the transfer of the property or the closing of the residential mortgage loan, paid by the residential mortgage debtor." *Id.* "Finance charge" is defined under the Act as "the total cost of a loan or charge for the use of money," and is referenced specifically in connection with the residential mortgages. *Id.*

Additionally, the substantive provisions of the Act all contemplate loans. Section 201, titled "Maximum lawful interest rate," provides "the maximum lawful rate of interest *for the loan or use of money* in an amount of fifty thousand dollars ($50,000) or less in all cases where no express contract shall have been made for a less rate shall be six per cent per annum." 41 P.S. § 201 (emphasis added). Section 301 is entitled "Residential mortgage interest rates," and specifically addresses residential mortgage rates and requirements. 41 P.S. § 301. Sections 401, 401.1, 402, 403, 404, 405, 406, 407, and 408 are titled "Disclosure requirements," "Photocopies of security documents," "Discount points prohibited," "Notice of intention to foreclose," "Right to cure a default," "Prepayment penalty prohibited," "Attorney's fees payable," "Confession of judgment," and "Waivers," respectively, and all of these sections pertain to mortgages. 41 P.S. §§ 401, 401.1, 402, 403, 404, 405, 406, 407, 408.

Section 501, titled "Excessive interest need not be paid," provides:

When a rate of interest *for the loan or use of money,* exceeding that provided by this act or otherwise by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over such maximum interest rate and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of such debt providing the borrower or debtor gives notice of the asserted excess to the creditor.

41 P.S. § 501 (emphasis added). Finally, Section 603 vests authority for enforcement of Act 6 with the Secretary of Banking. 41 P.S. § 603. Accordingly, when the language of Act 6 is read as a whole, it is evident the Act pertains to charges and fees incurred for the loan or use of money.

Moreover, and as noted above, the title of Act 6 is the "Loan Interest and Protection Law," and the preamble to Act 6 describes the Act as follows:

An Act regulating agreements for the loan or use of money; establishing a maximum lawful interest rate in the Commonwealth; providing for a legal rate of interest; detailing exceptions to the maximum lawful interest rate for residential mortgages and for any loans in the principal amount of more than fifty thousand dollars and federally insured or guaranteed loans and unsecured, uncollateralized loans in excess of thirty-five thousand dollars and business loans in excess of ten thousand dollars; providing protections to debtors to whom loans are made including the provision for disclosure of facts relevant to the making of residential mortgages, providing for notice of intention to foreclose and establishment of a right to cure defaults on residential mortgage obligations, provision for the payment of attorney's fees with regard to residential mortgage obligations and providing for certain interest rates by banks and bank and trust companies; clarifying the substantive law on the filing of an execution on a confessed judgment; prohibiting waiver of provisions of this act, specifying powers and duties

of the secretary of banking, and establishing remedies and providing penalties for violations of this act.

Act of Jan. 30, 1974, P.L. 13, No. 6. The title and the language of this preamble clearly contemplate an act applying to claims arising from the loan or use of money. *See* 1 Pa.C.S.A. § 1924 ("The title and preamble of a statute may be considered in the construction thereof. Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer."). Thus, the Commonwealth Court's determination notwithstanding, we conclude the plain language of Act 6 restricts its application to claims involving the loan or use of money.

Even assuming, however, that Taxpayers' interpretation of Section 502 is reasonable, and, therefore, that the statute is ambiguous, *see Delaware Cty. v. First Union Corp.*, 605 Pa. 547, 557, 992 A.2d 112, 118 (2010) (a statute is ambiguous when there are at least two reasonable interpretations), based on further principles of statutory construction, we would conclude that the legislature intended Act 6 to apply only to claims involving the loan or use of money.

Where the words of a statute are not explicit, and there is an ambiguity, we may consider, *inter alia,* the object of the statute; the mischief to be remedied; and the contemporaneous legislative history. 1 Pa.C.S.A. § 1921(c). Furthermore, we are to presume that, "[w]hen a court of last resort has construed the language in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa. C.S.A. § 1922(4). In interpreting a statute, we have also relied upon the General Assembly's familiarity with other extant decisional law when it amends legislation. *White Deer Twp. v. Napp*, 603 Pa. 562, 590, 985 A.2d 745, 762 (2009).

As discussed above, the language of the preamble to Act 6, its definitional sections, and its substantive provisions clearly demonstrate that Act 6 is a usury law, designed to protect borrowers against improper mortgage lending practices. This conclusion is further supported by the remarks of Senator

Zemprelli regarding the purpose of the statute and the problems the statute was designed to remedy. *See supra* note 6.

Moreover, although this Court has not previously addressed the issue of whether, and to what extent, Act 6 may be used as the basis for claims not related to the loan or use of money, the Superior Court, in 1994, addressed the scope of Act 6 in *In re Estate of John Francis Braun:*

> [Act 6] was designed to protect the citizenry of this Commonwealth from being exploited at the hands of unscrupulous individuals seeking to circumvent the law at the expense of unsuspecting borrowers who may have no other avenue to secure financial backing. By its own terms, [Act 6] only governs transactions relating to the loan or use of money. 41 P.S. § 201 (fixing the maximum lawful rate of interest for the loan or use of money). *See also* 20 P.L.E. § 22 (usury contemplates the existence of a loan; when there is no loan, usury cannot arise), citing *Seltzer v. Sokoloff,* 302 Pa. 449, 451, 153 A. 724, 724 (1931) (usury arises between borrower and lender).

650 A.2d at 77 (citation omitted); *see also Equip. Fin., Inc. v. Grannas,* 207 Pa.Super. 363, 218 A.2d 81, 82 (1966) (holding, under predecessor to Act 6, that usury law applies only to matters involving the loan of money or the forbearance of a debt).

In 2000, the Third Circuit, in a case involving, *inter alia,* an action by a group of homeowners to recover excess interest paid for assigned delinquent municipal tax and utility claims, predicted this Court would follow the approach taken by a number of our sister courts, including those in Connecticut, Idaho, and Minnesota, which have held that "usury laws apply only when a creditor agrees to take interest in exchange for making a loan or promising to forbear from the immediate collection of a debt." *Pollice,* 225 F.3d at 393. The court explained:

> The phrase "paid a rate of interest for the loan or use of money" under section 502 of [Act 6] implies that there is some consensual arrangement between the parties; that is,

an agreement by the lender or creditor to make a loan, or to grant the debtor the "use" of money by promising to forbear from taking immediate action to collect a debt, in exchange for interest. We believe there has been no "loan or use of money" under section 502 when a debtor simply detains money which the creditor wishes to receive immediately.

*Id.* at 394–95.

In support of its conclusion, the court cited the Superior Court's decision in *Equip. Fin., supra,* as well as this Court's decision in *In re Kenin's Trust Estate,* 343 Pa. 549, 23 A.2d 837 (1942), wherein we held the predecessor to Act 6 was inapplicable to a claim for damages resulting from a trustee's detention of funds: "The word 'use' when referring to money is often employed as a synonym for 'loan'. Money is not 'used' within the meaning of this act when it is detained under the circumstances here present." *Id.* at 563 n. 4, 23 A.2d at 844 n. 4.

Following the Superior Court's decision in *In re Estate of John Francis Braun,* and the Third Circuit's predictions in *Pollice,* the legislature amended Act 6, in 2008. Notably, despite the *Braun* and *Pollice* decisions, at that time, the General Assembly made no changes to Section 502. Had the legislature intended a different interpretation of Act 6 than described by the Superior Court and the Third Circuit decisions, the legislature could have taken that opportunity to clarify the statute. *See White Deer Twp., supra* (in interpreting statute, finding noteworthy that legislature, in previously amending statute, left intact Commonwealth Court precedent).

Accordingly, we conclude that, contrary to the Commonwealth Court's determination, the plain language of Section 502 does not support a cause of action to challenge costs, unless those costs are incurred in connection with the loan or use of money. Alternatively, even if we were to conclude Section 502 is ambiguous in this regard, based on the occasion for the statute and the mischief to be remedied; the legislative history of the statute; and the fact that the legislature amend-

ed the statute without altering its language, notwithstanding the extant decisional law, demonstrates the legislature did not intend for Act 6 to apply to claims not involving the loan or use of money. Thus, Taxpayers' claims to recover fees under Act 6, as set forth in Count II of their complaint, must fail.

■ In light of our determination that Act 6 is a usury statute that provides remedies only for claims involving the loan or use of money, and, therefore, does not provide a separate cause of action by which delinquent taxpayers may recover improperly imposed fees, we need not address Portnoff's second claim on appeal that the Commonwealth Court erred in concluding Taxpayers' claims under Act 6 could be brought in a class action.

■■ In her final issue, Portnoff argues that the Commonwealth Court erred in upholding the trial court's determination that she lacked authority under Section 7103 of the MCTLA to recover from Taxpayers an "administrative cost" fee of $35. Taxpayers, in Count III of their Complaint, challenged Portnoff's collection of this fee by framing their claim as one of unjust enrichment.[8]

Section 7103 of the MCTLA, titled "Taxes first lien," provides:

All taxes which may hereafter be lawfully imposed or assessed on any property in this Commonwealth ... shall be and they are hereby declared to be a first lien on said property, together with all charges, expenses, and fees added thereto for failure to pay promptly; and such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, or estate with which the said property may become charged or for which it may

8. Unjust enrichment is the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution. *American and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 594 n. 7, 2 A.3d 526, 532 n. 7 (2010). An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law. *Schott v. Westinghouse Elec. Corp.*, 436 Pa. 279, 290, 259 A.2d 443, 448 (1969).

become liable, save and except only the costs of the sale and of the writ upon which it is made.

53 P.S. § 7103.

Section 7101 ("Definitions") of the MCTLA currently provides, in part:

The word "taxes," as used in this act, means any county, city, borough, incorporated town, township, school, bridge, road, or poor taxes, together with and *including all penalties, interest, costs, charges, expenses and fees, including reasonable attorney fees, as allowed by this act and all other applicable laws.*

\* \* \*

The words "charges, expenses, and fees," as used in this act, include all sums paid or incurred by a municipality to file, preserve and collect unpaid taxes, tax claims, tax liens, municipal claims and municipal liens, including, but not limited to, prothonotary and sheriff fees, postage expenses, and title search expenses. *A [municipality] may also recover as "charges, expenses, and fees" the charges, expenses, commissions and fees of third-party collectors retained by the [municipality], provided that the charges, expenses, commissions and fees of such third-party collectors are approved by legislative action of the [municipality] which levies the unpaid taxes, tax claims, tax liens, municipal claims and municipal liens.*

53 P.S. § 7101 (2004) (emphasis added).

In holding Portnoff was not entitled to recover the $35 administrative cost fee from Taxpayers, the trial court concluded "[t]he only 'costs' that [Portnoff] was entitled to recover under 53 P.S. § 7103 are the 'charges, expenses, and fees that were actually incurred and could have been taxed as costs.' " Trial Court's Conclusions of Law, 3/11/08, at ¶ 45 (emphasis omitted). The trial court further determined that "[t]he collection agreements between [Portnoff] and their clients, and the ordinances and resolutions passed by their municipal clients, did not authorize or disclose the assessment of the $35 fee." Trial Court's Findings of Fact at ¶ 18.

However, with respect to the ordinances and resolutions, or lack thereof, the instant appeal concerns Portnoff's actions between November 2000 and November 2002. The provision of Section 7101 that allows a municipality to recover as " 'charges, expenses, and fees' the charges, expenses, commissions and fees of third-party collectors" retained by the municipality, "provided that the charges, expenses, commissions and fees of such third-party collectors are approved by legislative action" of the municipality which levies the unpaid taxes, was not included in Section 7101 until September 13, 2004. Accordingly, during the time period at issue in the case *sub judice,* Section 7101 did not require that Portnoff's charges be approved by legislative action of the municipalities.

Nevertheless, in affirming the trial court's holding that Portnoff was not authorized to collect the $35 administrative cost fee because it was not a "cost" she was entitled to recover under Section 7103, the Commonwealth Court focused on the above-quoted language of Section 7103 of the MCTLA, and stated:

> This Court held in *Pentlong Corporation. v. GLS Capital, Inc.,* 780 A.2d 734 (Pa.Cmwlth.2001) [*aff'd in part, rev'd in part, Pentlong Corp, v. GLS Capital, Inc.,* 573, Pa. 34, 573 Pa. 34, 820 A.2d 1240 (2003)], that under [Section 7103 of the MCTLA], the term "costs" [9] specifically refers to charges, expenses or fees that "were actually incurred and could have been taxed as costs" by the taxing authority. *Id.* at 749, (stating that a tax lien assignee "is not entitled to any costs that the County did not actually incur"). Here, the administrative fee charged by Portnoff was not such a cost because the related costs, i.e., the expenses Portnoff incurred, were incurred by Portnoff directly and never incurred by the taxing authority. Accordingly, the trial

9. The Commonwealth Court mischaracterizes the *Pentlong* court's use of the term "costs," suggesting the term is defined and/or limited by the express language of Section 7103. However, the Commonwealth Court in *Pentlong* used the term "costs" generically, as "costs" was the term used by the taxpayers in that case when referring to the specific charges, expenses, and fees they were challenging.

court did not err in finding that the administrative fees were not recoverable from Taxpayers.

*Roethlein,* 25 A.3d at 1280 (internal footnote omitted). On appeal, Portnoff contends that the Commonwealth Court's analysis was based on a "fundamental misreading" of the MCTLA, as well as a "misapprehension" of its own decision in *Pentlong.* We are constrained to agree.

Section 7101 defines "taxes" as a variety of types of taxes "together with and including all penalties, interest, costs, charges, expenses and fees, including reasonable attorney fees." 53 P.S. § 7101. In holding that Portnoff was not authorized to collect, on behalf of the municipalities, the $35 administrative cost fee she charged the municipalities for opening accounts and sending the initial delinquency notices, the panel majority of the Commonwealth Court failed to explain why those fees were not recoverable as "penalties, interest, costs, charges, expenses and fees" included in the definition of taxes under Section 7101.

Moreover, to the extent the Commonwealth Court relied on *Pentlong* in support of its holding, we find such reliance to be misplaced. In *Pentlong,* the Commonwealth Court considered, *inter alia,* the issue of what costs and/or fees the assignee of a county's property tax liens was entitled to recover from the delinquent taxpayers. The delinquent taxpayers argued that Section 7103 "only allows [for] the collection of 'charges, expenses, and fees' that were actually paid in collecting on the face amount of any unpaid tax claim, not for costs incurred," and that, because neither the county, nor the assignee, GLS Capital Inc. ("GLS"), actually paid lien assignment and lien revival costs, those costs were not recoverable under Section 7103. *Pentlong,* 780 A.2d at 748. The Commonwealth Court stated in *Pentlong:*

> The second type of "costs" at issue appears to be charges that GLS says it can impose pursuant to [Section 7103 of the MCTLA], even though they were never paid by the County.

* * *

The trial court never directly answered this issue but only stated that the Prothonotary was authorized to impose certain fees under Section 1 of the Second Class County Prothonotary Fee Act, Act of June 18, 1982, P.L. 547, 42 P.S. § 21061. While it is clear that GLS is entitled to recover all record costs that the County incurred and could legally impose if it owned the lien, *[Section 7103] only allows the collection of "charges, expenses, and fees" that were actually incurred and could have been taxed as costs.* Consequently, GLS is not entitled to any costs that the County did not actually incur.

*Id.* at 749 (emphasis added).

The Commonwealth Court's decision in *Pentlong* was based on the principle that the assignee was not entitled to recover any costs which were not *actually incurred.* Indeed, in affirming, in part, the Commonwealth Court's decision in *Pentlong,* this Court reiterated that "Section 7103 of the Act expressly provides that a municipality may collect from Taxpayers not only the face amount of a tax, but also 'all charges, expenses and fees added thereto for failure to pay promptly.' " *Pentlong Corp. v. GLS Capital, Inc.,* 573 Pa. 34, 58, 820 A.2d 1240, 1255 (2003). In the instant case, as noted by Judge Leavitt in her dissent, the evidence established that, under the terms of their contracts with Portnoff, the municipalities agreed to pay a $35 "administrative cost" fee to Portnoff for each delinquent tax claim notice sent. *See, e.g.,* Agreement for Collection of Delinquent Real Estate Taxes on Behalf of the Allentown City School District, Reproduced Record ("R.R.") 231a; Agreement for Collection of Delinquent Real Estate Taxes on Behalf of City of Bethlehem, R.R. at 239a. Furthermore, the contracts provided that Portnoff could collect that $35 fee from the delinquent taxpayer and reimburse the municipality, and Portnoff testified that when she collected the fee, she remitted it to the municipality. N.T. Trial, 9/5/07, at 18. Thus, we conclude the Commonwealth Court's determination that "the expenses Portnoff incurred [ ] were incurred by Portnoff directly and never incurred by the taxing authority," *Roethlein,* 25 A.3d at 1280, is erroneous.

Moreover, although the trial court did not find Portnoff's testimony that she remitted the administrative cost fee to the municipalities to be credible, suggesting the municipalities may have a cause of action for breach of contract against Portnoff, the trial court's finding in this regard does not alter the fact that, under the plain language of the MCTLA, the $35 administrative cost fees incurred by the municipalities in their effort to collect delinquent taxes were recoverable from Taxpayers. *See* 53 P.S. § 7101 (a municipality may recover "charges, expenses, and fees" incurred in the collection of delinquent taxes, including, under certain circumstances, charges, expenses, and fees of third-party tax collectors retained by the municipality). Accordingly, we conclude the Commonwealth Court erred in holding that the $35 administrative cost fee Portnoff charged to the municipalities could not be recovered under the MCTLA, and, as a result, we hold that Taxpayers failed to establish that Portnoff was unjustly enriched by her collection of the fees.

Based on our determination that (1) Taxpayers do not have a cause of action against Portnoff under Act 6, and (2) Portnoff was not unjustly enriched by her collection of a $35 administrative cost fee, we reverse the decision of the Commonwealth Court, and remand the matter to the Commonwealth Court for further proceedings, consistent with this opinion.

Case remanded. Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER and McCAFFERY join the opinion.