IN THE COMMONWEALTH COURT OF PENNSYLVANIA

DVR Philly, LLC,                              :
                    Petitioner               :
                                             :
                                             :
        v.                                   :   No. 74 C.D. 2023
                                             :
Philadelphia Regional Port Authority  :
a/k/a PhilaPort (Board of Claims),           :
                    Respondent               :   Submitted: November 9, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED:  January 9, 2024

        Petitioner DVR Philly, LLC, (DVR) petitions for review of the Pennsylvania

Board of Claims' (Board) December 29, 2022 opinion and order (Order), through

which the Board sustained Respondent Philadelphia Regional Port Authority a/k/a

PhilaPort's (PhilaPort) preliminary objections and dismissed DVR's Statement of

Claim (Statement) with prejudice. Upon review, we vacate the Board's Order and

remand this matter to the Board for further proceedings.

## I. Background

        In 2016, DVR and PhilaPort entered into an agreement, whereby DVR leased

125 acres of property from PhilaPort known collectively as "Southport Site I, Site 2,

Pier 98 Annex, Whiskey and Savage Yard." Statement ¶10.[1] Thereafter, in 2020, the

parties amended the agreement, in response to unspecified issues that had arisen

under the original version. *Id.* ¶11. As amended, the lease agreement requires

---

[1] DVR did not provide the precise location or locations of the leased property; rather, it
only identified the parcels by the names used in the lease.

PhilaPort to provide DVR with several different types of rent credits and rebates. *See id.* ¶¶32-39.

On March 21, 2023, DVR filed its Statement with the Board. Therein, DVR alleged that, per the terms of the amended agreement, PhilaPort had been obligated to provide DVR with the promised credits and rebates beginning in May and June of 2020, but had failed to actually do so until September and October of that year. *Id.* ¶¶32-39, 42, 45, 49, 53, 57.[2] Consequently, DVR asserted that it was entitled to compensation from PhilaPort, in the form of interest at the legal rate of 6%[3] on the amount of delayed credits and rebates, that totaled $27,212.50. *Id.* ¶¶40-41, 43-44, 47-48, 51-52, 55-56, 59-61. DVR also stated that it had already sought to directly recoup this interest from PhilaPort by filing a claim for payment with Jeffrey Theobald, PhilaPort's Executive Director and Chief Executive Officer, on February

---

[2] DVR stated that the due date and actual payment date differed for each credit or rebate; depending on the type of credit or rebate, some were owed beginning on May 1, 2020, while others were owed beginning on June 1, 2020, and payment was made on some starting on September 15, 2020, while for others DVR did not receive payment until October 15, 2020. Statement ¶¶32-39, 42, 45, 49, 53, 57; *see id.*, Ex. 4 (Section 5 of the amended agreement, which articulates the parameters of the rent credits and rebates).

[3] Per Section 202 of the Act of January 30, 1974, P.L. 13, "[r]eference in any law or document enacted or executed heretofore or hereafter to 'legal rate of interest' and reference in any document to an obligation to pay a sum of money 'with interest' without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum." 41 P.S. § 202. DVR avers that this statutory interest rate applies here, because "[t]here is neither a contract between PhilaPort and DVR nor an applicable statute providing a rate of interest other than the legal rate." *See* Statement, ¶¶40-41.

10, 2021,[4] but that PhilaPort had denied this claim on March 8, 2021, compelling DVR to seek relief through the Board instead. *Id.* ¶¶8-9.[5]

PhilaPort responded to the Statement by filing preliminary objections in the nature of a demurrer on May 21, 2023. Specifically, PhilaPort argued that DVR was seeking what was, in essence, prejudgment interest. Prelim. Objs. ¶¶9-10. According to PhilaPort, it is an instrumentality of the Commonwealth and, thus, is not obligated to pay such interest unless required to do so by contract or statute. *Id.* ¶12. PhilaPort asserted that there was no such agreement or law authorizing DVR to seek or secure prejudgment interest in this instance, thereby rendering DVR's demand legally

---

[4] DVR was required to do this in order to comply with Section 1712.1(b) of the Commonwealth Procurement Code (Procurement Code), which reads as follows: "A claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum. Untimely filed claims shall be disregarded by the contracting officer." 62 Pa. C.S. § 1712.1(b). "Contracting officer" is defined in the Procurement Code as "[a] person authorized to enter into and administer contracts and make written determinations with respect to contracts." *Id.* § 103. In its Statement, DVR identified Theobald as PhilaPort's contracting officer. Statement, ¶7.

[5] Per Section 1712.1(d) and (e) of the Procurement Code:

> (d) Determination.--The contracting officer shall review a claim and issue a final determination in writing regarding the claim within 120 days of the receipt of the claim unless extended by consent of the contracting officer and the contractor. If the contracting officer fails to issue a final determination within the 120 days unless extended by consent of the parties, the claim shall be deemed denied. The determination of the contracting officer shall be the final order of the purchasing agency.

> (e) Statement of claim.--Within 15 days of the mailing date of a final determination denying a claim or within 135 days of filing a claim if no extension is agreed to by the parties, whichever occurs first, the contractor may file a statement of claim with the [B]oard.

62 Pa. C.S. § 1712.1(d)-(e).

3

unviable. *Id.* ¶¶14-17. As such, PhilaPort requested that the Board dismiss the Statement with prejudice. *Id.*, Wherefore Clause.

The Board assented to PhilaPort's request by sustaining the preliminary objections on December 29, 2022. In doing so, the Board explained that its authority to award interest was governed by Section 1751 of the Procurement Code. Board's Order at 6. This statute provides, in relevant part:

> Interest on amounts ultimately determined to be due shall be payable at the statutory rate applicable to judgments from the date the claim was filed with the contracting officer.

62 Pa. C.S. § 1751. The Board interpreted this language as allowing it to award interest to a claimant, while also prohibiting such an award for any time period prior to when the relevant claim had been filed with the designated contracting officer. Board's Order at 7. The Board then concluded that it had no authority to award DVR the compensation it sought from PhilaPort, because DVR only sought interest that had theoretically accumulated well before February 10, 2021, the date upon which DVR had filed its claim with PhilaPort's contracting officer. *Id.* at 7-8. Accordingly, the Board dismissed DVR's Statement with prejudice. *Id.* at 8. This appeal to our Court followed shortly thereafter.

## II. Discussion

DVR maintains that the Board improperly sustained PhilaPort's preliminary objections for several reasons, which we summarize as follows.[6] First, the Board

---

[6]    We note . . . that the standard for review for preliminary objections is a limited one. . . . All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a

**(Footnote continued on next page…)**

4

erred by *sua sponte* using Section 1751 of the Procurement Code as the basis for dismissing the Statement, because PhilaPort did not predicate its argument upon this law or even mention this statute in its preliminary objections. DVR's Br. at 10-11. Second, the Board's interpretation of Section 1751 is erroneous on its merits, as neither that statute nor any case law prevents the Board from awarding interest to a claimant calculated from the date upon which a contractual breach occurred. *Id.* at 11-16. Finally, PhilaPort is not immune from liability for interest of the kind that DVR seeks, because the General Assembly waived any such immunity by establishing the Board, as well as because PhilaPort is a mere instrumentality of the Commonwealth of Pennsylvania and is not imbued with the full panoply of immunities held by its parent entity. *Id.* at 16-19.

With regard to DVR's first argument, it is beyond cavil that an adjudicatory body must remain neutral when handling a legal dispute and "should not act as a party's advocate." *Battiste v. Borough of E. McKeesport*, 94 A.3d 418, 423 n.7 (Pa. Cmwlth. 2014). It follows from this that an administrative tribunal "may not, *sua sponte*, augment the subject matter of a proceeding" by addressing issues that were not raised by the parties thereto. *Sunoco Pipeline, L.P v. Pub. Util. Comm'n*, 295 A.3d 37, 52 (Pa. Cmwlth. 2023); *see Follett v. Workers' Comp. Appeal Bd. (Massachusetts Mut. Life Ins. Co.)*, 551 A.2d 616, 621 (Pa. Cmwlth. 1988) ("*Sua*

---

demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Emps. Ins. of Wausau v. Dep't of Transp.*, 865 A.2d 825, 830 n.5 (Pa. 2005) (internal citations and some punctuation omitted).

"In reviewing a Board decision[,] this Court determines whether the Board committed an error of law, whether the necessary findings were supported by substantial evidence, or whether constitutional rights were violated. Our standard of review of [a Board] order sustaining preliminary objections based on an issue of law is *de novo*, and our scope of review is plenary." *Lobar Assocs., Inc v. Pa. Tpk. Comm'n*, 216 A.3d 526, 533 n.7 (Pa. Cmwlth. 2019) (internal citations omitted).

*sponte* consideration of an issue deprives counsel of the opportunity to brief and argue the issues and the [administrative tribunal] of the benefit of counsel's advocacy. Moreover, raising issues *sua sponte* after the record is closed and without notice to the parties constitutes a due process violation."). That said, "it [is] within the power and authority of any tribunal performing quasi-judicial functions to determine the nature and extent of its own jurisdiction." *Kim v. Est. of Heinzenroether,* 390 A.2d 874, 876 (Pa. Cmwlth. 1978).[7] Furthermore,

> any issue going to the subject matter jurisdiction of a court or administrative tribunal to act in a matter . . . cannot be waived by the parties[,] nor can the parties confer subject matter on a court or tribunal by agreement or stipulation. Since an issue of subject matter jurisdiction is not waivable, it may be raised at any stage of a proceeding by a party, or *sua sponte* by the court or agency.

*Blackwell v. State Ethics Comm'n*, 567 A.2d 630, 636 (Pa. 1989) (internal citations omitted).

In this instance, PhilaPort did not cite to or discuss Section 1751 of the Procurement Code in its preliminary objections, or assert therein that the Board had no authority whatsoever to award prejudgment interest to a claimant. Rather, it predicated its entire argument upon its position that DVR could not recoup prejudgment interest because, first, PhilaPort is a component of the Commonwealth and, second, because there were no relevant contractual or statutory provisions allowing such relief. Prelim. Objs. ¶¶12-16. Despite this, the Board did not address PhilaPort's assertion of immunity, but instead relied exclusively upon Section 1751 when concluding that "pursuant to statute, [the Board] may only award interest upon

---

[7] "Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs." *Del. River Port Auth. v. Pa. Pub. Util. Comm'n*, 182 A.2d 682, 686 (Pa. 1962).

claims brought before it that accrue[] after the filing of the [an] administrative claim with the agency[']s contracting officer." Decision at 7. The argument put forth by PhilaPort in its preliminary objections and the one addressed by the Board in its Decision are markedly different and, therefore, cannot be construed as addressing the same issue.

It appears that the Board treated Section 1751 of the Procurement Code as if that statute deprived it of jurisdiction to award the relief sought by DVR. To reiterate, Section 1751 reads, in relevant part:

> Interest on amounts ultimately determined to be due shall be payable at the statutory rate applicable to judgments from the date the claim was filed with the contracting officer.

62 Pa. C.S. § 1751. Determining the meaning of this language presents a question of pure statutory interpretation.

> The object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa. C.S. § 1921(a). In pursuing that end, we are mindful a statute's plain language generally provides the best indication of legislative intent. *See Com*[.] *v. McClintic*, . . . 909 A.2d 1241 ([Pa.] 2006). Thus, statutory construction begins with examination of the text itself. [*Se.*] *Pa. Transp. Auth. v. Holmes*, 835 A.2d 851 (Pa. Cmwlth. 2003).
>
> In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a).
>
> Moreover, although we must "listen attentively to what a statute says[;] [o]ne must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, . . . 788 A.2d 955, 962 ([Pa.] 2001). We may not insert a word the legislature failed to supply into a statute.

*Girgis v. Bd. of Physical Therapy*, 859 A.2d 852 (Pa. Cmwlth. 2004).

*Malt Beverage Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 175-76 (Pa. Cmwlth. 2007). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "However, if we deem the statutory language ambiguous, we must then ascertain the General Assembly's intent by statutory analysis, wherein we may consider numerous relevant factors." *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013) (citing 1 Pa. C.S. § 1921(c)).

> A statute is ambiguous when there are at least two reasonable interpretations of the text. . . . In construing and giving effect to the text, "'we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.'" *Roethlein v. Portnoff Law Assoc.*, . . . 81 A.3d 816, 822 ([Pa.] 2013), citing *Mishoe v. Erie Ins. Co.*, . . . 824 A.2d 1153, 1155 ([Pa.] 2003)[; a]ccord [*Pa. Gaming Control Board v. Off. of Open Recs.*], . . . 103 A.3d 1276, 1285 ([Pa.] 2014) (party's argument that statutory language is ambiguous "depends upon improperly viewing it in isolation;" when language is properly read together and in conjunction with rest of statute, legislative intent is plain).

*A.S. v. Pa. State Police*, 143 A.3d 896, 905-06 (Pa. 2016) (some citations omitted).

Applying these precepts to Section 1751 of the Procurement Code, we observe that this statute explicitly authorizes an award of interest calculated from when a claim was filed with the appropriate contracting officer. By contrast, it is entirely silent regarding whether interest may be awarded prior to the filing of such a claim. We also note that there are no other applicable provisions, in the Procurement Code or elsewhere, that expressly permit an award of pre-claim interest regarding this type of contractual dispute. Therefore, we read Section 1751 as plainly vesting the Board

with the ability to award interest to a claimant, but *only* that which accrued post-claim.[8]

However, this does not mean that Section 1751 is jurisdictional in nature. Rather, it is an object example of a statute that limits a tribunal's power, rather than its jurisdictional authority.

> 'Jurisdiction' and 'power' are not interchangeable although judges and lawyers often confuse them. Jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

*Del. River Port Auth.*, 182 A.2d at 686 (internal citation omitted). "The pertinent consideration [regarding jurisdictional issues] is whether the court could 'enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case.'" *Domus, Inc. v. Signature Bldg. Sys. of Pa., LLC*, 252 A.3d 628, 636 (Pa. 2021) (quoting *Cnty. of Allegheny v. Workers' Comp. Appeal Bd. (Parker)*, 177 A.3d 864, 872 n.10 (Pa. 2018)).

> Even if a plaintiff ha[s] no standing to bring his action, even if his statement of claim or bill in equity be demurrable, even if he fail[s] to establish the allegations in his complaint, even if the court ultimately conclude[s] that the relief he seeks should not be granted in whole or in part, not any or all of these circumstances would enter into, much less determine, the question whether the court has jurisdiction of the litigation.

---

[8] This represents a significant change from the Procurement Code's predecessor, the former Board of Claims Act (Claims Act). Act of May 20, 1937, P.L. 728, *as amended*, *formerly* 72 P.S. §§ 4651-1-4651-10, *repealed by* the Act of December 3, 2002, P.L. 1147, No. 142. Under the Claims Act, which did not impose similar limitations on the Board regarding awarding interest, accrual of such interest began "run[ning] from the date on which the Commonwealth's [contractual] obligation . . . to the [claimant] arose." *Dep't of Prop. & Supplies v. Berger*, 312 A.2d 100, 107-08 (Pa. Cmwlth. 1973).

9

*Sch. Dist. of Zerbe Twp. v. Thomas*, 44 A.2d 566, 568 (Pa. 1945).

No such jurisdictional concerns exist here. By law, our General Assembly expressly established PhilaPort "as a public authority and instrumentality of the Commonwealth[,]" and vested it with the ability to "exercise the powers of the Commonwealth as an agency of the Commonwealth." 55 P.S. § 697.4.[9] Additionally, Section 1724(a) of the Procurement Code states, in relevant part:

> The [B]oard shall have exclusive jurisdiction to arbitrate claims arising from all of the following:
>
> > (1) A contract entered into by a Commonwealth agency in accordance with this part and filed with the [B]oard in accordance with [S]ection 1712.1 [of the Procurement Code] (relating to contract controversies).
> >
> > . . . .
> >
> > (3) Unless otherwise provided by law, a contract entered into by a Commonwealth agency involving real property interests in which the Commonwealth agency is the respondent.

62 Pa. C.S. § 1724(a)(1), (3). Given that the current dispute arose from PhilaPort's agreement to lease certain parcels of land to DVR, these two statutes collectively, and indisputably, gave the Board jurisdiction over the current dispute. Furthermore, while the Board's ability to award interest is certainly circumscribed by Section 1751 of the Procurement Act, it remains that this limitation only affects the relief the Board is able to provide to successful claimants, not its authority to adjudicate disputes. It was therefore erroneous for the Board to raise Section 1751 in a *sua sponte* fashion and rely upon that statutory language as the basis for sustaining PhilaPort's preliminary objections.

---

[9] Section 4 of the Philadelphia Regional Port Authority Act, Act of July 10, 1989, P.L. 291, No. 50.

### III. Conclusion

In accordance with the foregoing analysis, we vacate the Board's Order and remand this matter to the Board, with instructions that it issue an amended opinion and order within 30 days that adjudicates the specific argument made by PhilaPort in its preliminary objections.[10]


_____
ELLEN CEISLER, Judge

---

[10] Due to our disposition of this appeal, we decline to reach DVR's remaining argument regarding whether PhilaPort is immune from liability for prejudgment interest.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

DVR Philly, LLC,                         :
               Petitioner              :
                                            :
       v.                                   :   No. 74 C.D. 2023
                                            :
Philadelphia Regional Port Authority  :
a/k/a PhilaPort (Board of Claims),      :
              Respondent             :

# **O R D E R**

AND NOW, this 9th day of January, 2024, it is hereby ORDERED that Pennsylvania Board of Claims' (Board) December 29, 2022 opinion and order is VACATED. It is FURTHER ORDERED that this matter is REMANDED to the Board, with instructions that it issue an amended opinion and order within 30 days that adjudicates the specific argument made by Respondent Philadelphia Regional Port Authority a/k/a PhilaPort in its preliminary objections.

Jurisdiction relinquished.


_____
ELLEN CEISLER, Judge