J-A07032-21

2021 PA Super 106

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ADIEL SANCHEZ-FROMETA | : | |
| | : | |
| Appellant | : | No. 744 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 13, 2019
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0002072-2016

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED: MAY 25, 2021**

Appellant Adiel Sanchez-Frometa[1] appeals from the judgment of

sentence entered by the Court of Common Pleas of Franklin County after a

jury convicted Appellant of second-degree murder and related offenses for

crimes he committed as a juvenile.[2]  Appellant argues that the trial court did

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant's name is reported inconsistently in the certified record, which identifies Appellant in the docket sheets, pleadings, and court documents as either Sanchez-Frometa or Frometa-Sanchez.  Appellant did not attempt to amend the trial court docket sheet which lists his name as Sanchez-Frometa.

[2] We note that Appellant purported to appeal from the trial court's order denying his post-sentence motion.  It is well-established that "[i]n a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 (Pa.Super. 2001) (*en banc*) (citing **Commonwealth v. Chamberlain**, 658 A.2d 395, 397 (Pa.Super. 1995) (correcting caption to reflect an appeal from the judgment of sentence when the appellant purported to appeal the denial of his post-sentence motion).  The caption in this case has been corrected accordingly.

not have the authority to sentence him to life imprisonment without parole under 18 Pa.C.S.A. § 1102.1(c).

As discussed in more detail *infra*, as the plain language of Section 1102.1 is clear and unambiguous, we decline to uphold the trial court's interpretation of the statute which essentially adds language where the Legislature did not choose to do so. After careful review, we vacate Appellant's sentence and remand for resentencing.

In November 2016, Appellant was charged with first-degree murder, second-degree murder, aggravated assault, robbery of a motor vehicle, and theft by unlawful taking in connection with the stabbing death of the victim, Anthony Hernandez, in Chambersburg, Pennsylvania. Appellant was seventeen years old at the time of the commission of the crimes.

On July 5, 2018, the Commonwealth entered notice of its intent to seek a sentence of life imprisonment without parole if Appellant were convicted of first-degree murder. On January 22, 2019, Appellant entered a guilty plea to first-degree murder. However, on May 9, 2019, Appellant withdrew his guilty plea and proceeded to a jury trial.

On October 10, 2019, a jury acquitted Appellant of first-degree murder but convicted him of second-degree murder and the remaining offenses. On December 13, 2019, the trial court held a sentencing hearing at which both parties presented expert testimony and oral argument on the issue of whether a sentence of life imprisonment without parole was authorized and warranted.

At the conclusion of the hearing, the trial court imposed a sentence of life imprisonment without the possibility of parole.

On December 23, 2019, Appellant filed timely post-sentence motions, which the trial court subsequently denied on April 20, 2020. Appellant filed a timely notice of appeal on May 15, 2020. Thereafter, on May 15, 2020, the trial court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days of its order. The order specified that "any issue not properly included in [his] statement of errors complained of on appeal that is timely filed and served … shall be waived." Order, 5/20/20, at 1. Twenty-nine days later, on June 18, 2020, Appellant filed his concise statement.

As an initial matter, we must resolve a preliminary procedural matter as the trial court notes that Appellant failed to file a timely Rule 1925(b) statement. This Court has held that both the "complete failure to file the 1925(b) statement … [and the] untimely filing [of a 1925(b) statement] is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal." **Commonwealth v. Andrews,** 213 A.3d 1004, 1010 (Pa.Super. 2019) (quoting **Commonwealth v. Burton**, 973 A.2d 428, 432-33 (Pa.Super. 2009)).

While these circumstances often require a remand, "where the trial court addresses the issues raised in an untimely Rule 1925(b) statement, we need

not remand but may address the issues on their merits." ***Commonwealth v. Brown***, 145 A.3d 184, 186 (Pa.Super. 2016) (citation omitted).

In this case, we find that Appellant's counsel was *per se* ineffective in failing to file a timely concise statement on Appellant's behalf. However, as the trial court addressed the merits of Appellant's arguments, we need not remand this case for the preparation of a trial court opinion.

Appellant raises two issues for review on appeal:

a. Did the trial court commit reversible error when it sentenced [Appellant], over age fifteen (15) but under the age of eighteen (18) at the time of the commission of the offense, to life without the possibility of parole after a conviction for second-degree murder in direct contravention of 18 Pa.C.S.A. § 1102.1(c)(1)?

b. Did the trial court abuse its discretion holding the Commonwealth to a lesser burden than the required finding of irreparable corruption "beyond a reasonable doubt" entering a sentence of life without parole for Appellant, where there was not competent evidence of record to support the sentence and contradicted the failure to find "irreparable corruption" by both the Commonwealth and defense experts?

Appellant's Brief, at 4 (suggested answers omitted).

Appellant first claims that the trial court was not authorized by the language set forth in Section 1102.1(c)(1) of the Crimes Code to sentence him to life imprisonment without the possibility of parole for his conviction for second-degree murder for an offense he committed at the age of seventeen. The specific statutory language in question provides that "[a] person who at the time of the commission of the offense was 15 years of age or older shall

be sentenced to a term of imprisonment the minimum of which shall be at least 30 years to life."  18 Pa.C.S.A. § 1102.1(c)(1).

Appellant argues that Section 1102.1(c) only permits a trial court to sentence a juvenile offender convicted of second-degree murder to a term of years with a maximum sentence of life in prison with the possibility of parole. Appellant argues that a sentence of life imprisonment without parole is not an available sentence under Section 1102.1(c) as it was not explicitly specified.

In response, the Commonwealth argues that the language in Section 1102.1(c) does not explicitly foreclose a trial court from imposing a sentence of life imprisonment without parole for a juvenile offender convicted of second-degree murder.  Instead, the Commonwealth asserts that the statutory language only provides the court with a mandatory minimum and does not specifically mandate that such a defendant is entitled to the possibility of parole.  Commonwealth's Brief, at 12.

In reviewing issues of statutory construction, our standard of review is *de novo* and our scope of review plenary.  ***Thomas Jefferson Univ. Hosps., Inc. v. Pennsylvania Dep't of Lab. & Indus.***, 162 A.3d 384, 389 (Pa. 2017) (citation omitted).  We are guided by the following principles:

> When presented with matters of statutory interpretation, we are guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a).  When the words of a statute are clear and unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).  We construe words and phrases according to their common and approved usage, 1 Pa.C.S. § 1903(a), and every statute shall be

construed, if possible, to give effect to all of its provisions so that no provision is mere surplusage. 1 Pa.C.S. § 1921(a). In addition, in determining whether language is clear and unambiguous, the court should assess it in the context of the overall statutory scheme, construing all sections with reference to each other, not simply examining language in isolation. ***Commonwealth v. Office of Open Records***, 628 Pa. 163, 103 A.3d 1276, 1285 (2014).

When the words of a statute are not explicit, the General Assembly's intent is to be ascertained by consulting a comprehensive list of specific factors set forth in 1 Pa.C.S. § 1921(c); ***see also Pa. Associated Builders & Contrs., Inc. v. Commonwealth Dep't of Gen. Servs.***, 593 Pa. 580, 932 A.2d 1271, 1278 (2007) (recognizing that when "the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the occasion and necessity for the statute; the circumstances of its enactment; the object it seeks to attain; the mischief to be remedied; former laws; consequences of a particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations"). Finally, "as a general matter, we employ the interpretative principles of the [Statutory Construction Act] []." ***S & H Transp., Inc. v. City of York***, 210 A.3d 1028, 1038 (Pa. 2019).

***Linkosky v. Dep't of Transportation, Bureau of Driver Licensing***, 247 A.3d 1019, 1026 (Pa. 2021).

In the instant case, Appellant was sentenced to life imprisonment without the possibility of parole under Section 1102.1 after he was convicted of second-degree murder. The relevant language of the statute states:

**§ 1102.1. Sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer.**

(a) First degree murder.--A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

(1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

(2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 25 years to life.

(b) Notice.--Reasonable notice to the defendant of the Commonwealth's intention to seek a sentence of life imprisonment without parole under subsection (a) shall be provided after conviction and before sentencing.

(c) **Second degree murder.--A person who has been convicted after June 24, 2012, of a murder of the second degree,** second degree murder of an unborn child or murder of a law enforcement officer of the second degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

(1) **A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of imprisonment the minimum of which shall be at least 30 years to life.**

(2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of imprisonment the minimum of which shall be at least 20 years to life.

(d) Findings.--In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:

(1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

(i) Age.

(ii) Mental capacity.

(iii) Maturity.

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

(vii) Other relevant factors.

(e) Minimum sentence.--Nothing under this section shall prevent the sentencing court from imposing a minimum sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing may not supersede the mandatory minimum sentences provided under this section.

18 Pa.C.S.A. § 1102.1 (emphasis added).

It is undisputed that, as Appellant was convicted of second-degree murder in October 2019 for a crime he committed at the age of seventeen, he was subject to the sentencing provision in Section 1101.2(c)(1). We acknowledge that Section 1102.1(c)(1) does not explicitly state that a trial court can sentence a juvenile convicted of second-degree murder to life

imprisonment without the possibility of parole, but instead states that such an offender shall be given a minimum sentence which is "at least 30 years to life."  18 Pa.C.S.A. § 1102.1(c)(1).  As such, we must evaluate whether the phrase "at least 30 years to life" authorizes a trial court to impose a sentence of life imprisonment without the possibility of parole.

As noted above, we must first look to the plain language of the statute, which generally provides the best indication of legislative intent; "[i]t is only when statutory text is determined to be ambiguous that we may go beyond the text and look to other considerations to discern legislative intent."  **A.S. v. Pennsylvania State Police**, 143 A.3d 896, 903 (Pa. 2016).  Further,

> A statute is ambiguous when there are at least two reasonable interpretations of the text.  In construing and giving effect to the text, "'we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.'" **Roethlein v. Portnoff Law Assoc.,** 623 Pa. 1, 81 A.3d 816, 822 (2013), *citing* **Mishoe v. Erie Ins. Co.,** 573 Pa. 267, 824 A.2d 1153, 1155 (2003). **Accord Commonwealth v. Office of Open Records**, 628 Pa. 163, 103 A.3d 1276, 1285 (2014) (party's argument that statutory language is ambiguous "depends upon improperly viewing it in isolation;" when language is properly read together and in conjunction with rest of statute, legislative intent is plain). The United States Supreme Court also takes a contextual approach in assessing statutes and in determining predicate ambiguity. **See generally King v. Burwell**, [576] U.S. [473], 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015) ("If the statutory language is plain, we must enforce it according to its terms. But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." (internal quotation marks and citations omitted)); **Yates v. United States**, [574] U.S. [528], 135 S.Ct. 1074, 1081–82, 191 L.Ed.2d 64 (2015) ("Whether a statutory term is unambiguous, however, does not

turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.' Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things." (internal citations omitted)).

*A.S.*, 143 A.3d at 905–906 (some citations omitted).

Thus, in reviewing the statutory language in Section 1102.1(c), we do not look at this provision in isolation, but read this section in the context which it appears in the statute. Section 1102.1 encompasses sentencing law for individuals, who were convicted after June 24, 2012 of murder, murder of an unborn child, and murder of a law enforcement officer, and were under eighteen years of age at the time of the commission of the offense. 18 Pa.C.S.A. § 1102.1.

The statute distinguishes between first-degree murder and second degree murder and provides that different penalties are applicable. Pursuant to 1102.1(a)(1), a juvenile offender convicted of first-degree murder, murder of an unborn child, or murder of a law enforcement officer for an offense committed when the individual was 15 years or older, "shall be sentenced to **life imprisonment without parole**, or a term of imprisonment, the minimum of which shall be at least 35 years to life." 18 Pa.C.S.A. § 1102.1(a)(1) (emphasis added).

Pursuant to Section 1102.1(a)(2), a juvenile offender convicted of first-degree murder, murder of an unborn child, or murder of a law enforcement

officer for an offense committed when the individual was under 15 years of age, "shall be sentenced to **life imprisonment without parole**, or a term of imprisonment, the minimum of which shall be at least 25 years to life."  18 Pa.C.S.A. § 1102.1(a)(2) (emphasis added).

In comparison to the language in Sections 1102.1(a)(1)-(2) which explicitly authorizes trial courts to impose a sentence of life imprisonment without parole for juvenile offenders convicted of first-degree murder, Section 1102.1(c), which pertains to second-degree murder convictions, does not contain the phrase "life imprisonment without parole."  Instead, Section 1102.1(c)(1) simply states that an juvenile offender convicted of second-degree murder for a crime committed when he was 15 years or older "shall be sentenced to a term of imprisonment, the minimum of which shall be at least 30 years to life." 18 Pa.C.S.A. § 1102.1(c)(1).

Similarly, Section 1102.1(c)(2), which applies to juvenile offenders who were convicted of second-degree murder for crimes they committed while under 15 years of age, does not specify a punishment of life imprisonment without parole, but rather, "a term of imprisonment the minimum of which shall be at least 20 years to life."  18 Pa.C.S.A. § 1102.1(c)(2).

In addition, when viewing the statutory scheme as a whole, we note that Section 1102.1 also explicitly states that additional statutory protections apply when imposing a sentence of life imprisonment without parole for those defendants convicted of first-degree murder under Section 1102.1(a).  In particular, Section 1102.1(b) requires the Commonwealth to give the

defendant reasonable notice if it intends to pursue a sentence of life imprisonment without parole "**under subsection (a)**." 18 Pa.C.S.A. § 1102.1(b) (emphasis added). Likewise, Section 1102.1(d) requires the trial court to make certain findings "in determining whether to impose a sentence of life without parole **under subsection (a)**." 18 Pa.C.S.A. § 1102.1(d) (emphasis added).

We decline to adopt the trial court's statutory interpretation which would essentially add the phrase "life imprisonment without parole" to the provision in Section 1102.1(c)(1). It is impermissible to interpret a statute by adding words and phrases in a manner that affects its scope and operation. *Crown Castle NG E. LLC v. Pennsylvania Pub. Util. Comm'n*, 234 A.3d 665, 682 (Pa. 2020) (citing 1 Pa.C.S.A. § 1923) (other citation omitted). "[W]here the language of a statute is clear and unambiguous, a court may not add matters the legislature saw fit not to include under the guise of construction." *Mohamed v. Com., Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1194–95 (Pa. 2012) (quoting *Commonwealth v. Tarbert*, 535 A.2d 1035, 1044 (Pa. 1987)). Our Supreme Court has emphasized that our courts "must not overlabor to detect or manufacture ambiguity where there is none." *Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1264 (Pa. 2020).

It is well-established that "[w]here the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded." *Commonwealth v. Johnson*, 125 A.3d 822, 831 (Pa.Super. 2015) (citations omitted).

> Under the doctrine *expressio unius est exclusio alterius*, the inclusion of a specific matter in a statute implies the exclusion of other matters. Similarly, this Court has long recognized that as a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says[,] one must also listen attentively to what it does not say.

*Sivick*, 238 A.3d at 1264 (citation and footnote omitted). "[W]here a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 650–51 (Pa. 2021) (quoting *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009)).

As the Legislature explicitly authorized trial courts to sentence juvenile offenders to "life imprisonment without parole" for first-degree murder convictions under Section 1102.1(a) and excluded this specific language from Section 1102.1(c) which relates to second-degree murder convictions, we decline to add language which the Legislature did not see fit to include. Had the Legislature intended to authorize trial courts to sentence juvenile offenders convicted of second-degree murder to life imprisonment without the possibility of parole, it would have expressly done so.

Moreover, we reject the trial court's interpretation as it would render explicit references in the statute to "life imprisonment without parole" as mere surplusage. "[I]n construing a statute, the courts must attempt to give meaning to every word in a statute, as we cannot assume that the legislature intended any words to be mere surplusage." *Schock v. City of Lebanon*, 210 A.3d 945, 964–65 (Pa. 2019).

- 13 -

If we were to interpret Section 1102.1(c)(1) to encompass a punishment of life imprisonment without parole where the language therein only included the term "life," the other statutory provisions that specifically delineated authorization for the imposition of life imprisonment without parole (Section 1102.1(a)) and provided statutory protection in those circumstances (Section 1102.1(b) and (d)) would contain superfluous language in referring explicitly to "life imprisonment without parole under subsection (a)."

When Section 1102.1(c)(1) is properly read in conjunction with rest of statute, we find that the plain language of Section 1102.1 authorizes trial courts to impose a sentence of life imprisonment without parole only for juvenile offenders that committed first-degree murder, murder of an unborn child, and murder of a law enforcement officer when the trial court has ensured that the defendant has been afforded the additional statutory protections set forth in Section 1102.1(b) and (d).[3]

---

[3] We acknowledge that a panel of this Court found in **Commonwealth v. Seskey**, 170 A.3d 1105 (Pa.Super. 2017) that the language in Section 1102.1(c)(1) requires a maximum term of life imprisonment and authorizes a minimum term of "anywhere from 30 years to life, *i.e.*, LWOP [life imprisonment without opportunity for parole]." **Id**. at 1108.  Another panel included the same analysis in **Commonwealth v. Foust**, 180 A.3d 416, 428 (Pa.Super. 2018).

However, we note that the defendants in **Seskey** and **Foust** were not subject to the provisions of Section 1102.1, which is only applicable to juvenile offenders convicted of murder after June 24, 2012.  Instead, the defendants in **Seskey** and **Foust**, whose murder convictions were entered before this date, were subject to the statutory framework set forth in 18 Pa.C.S.A. § 1102.  As a result, the interpretation of Section 1102.1(c) in **Seskey** and **Foust** is dicta and not binding on this Court.

Accordingly, we conclude that the trial court had no authority under the plain language of Section 1102.1(c)(1) to sentence Appellant to life imprisonment without parole for his second-degree murder conviction. Given this conclusion, we need not evaluate Appellant's second issue on appeal. For the foregoing reasons, we vacate the judgment of sentence and remand for resentencing consistent with this decision.

Judgment of sentence vacated. Remand for resentencing proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/25/2021