J-S28043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEVIN JEROME ARTHUR TUCKER | : | |
| | : | |
| Appellant | : | No. 2836 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 11, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002258-2022

BEFORE: STABILE, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.:　　　　　　　　　**FILED OCTOBER 28, 2024**

Kevin Jerome Arthur Tucker ("Tucker") appeals from the judgment of sentence imposed following his guilty plea to rape of a child.[1]  We affirm.

A detailed recitation of the underlying facts is not necessary for disposition of the instant appeal.  Briefly, we note that the Commonwealth charged Tucker with rape of a child, endangering the welfare of a child, and corruption of a minor after he sexually assaulted and impregnated his girlfriend's twelve-year-old daughter ("the victim"), resulting in her having an abortion in 2022.  **See** Trial Court Opinion, 12/8/23, at 2-3.

On May 30, 2023, Tucker entered an open guilty plea to one count of rape of a child.  In exchange for his plea, the Commonwealth withdrew the remaining charges.  The trial court scheduled a sentencing hearing and ordered a pre-sentence investigation ("PSI") report.  Tucker completed a sex

---

[1] **See** 18 Pa.C.S.A. § 3121(c).

offender assessment and did not meet the criteria for classification as a sexually violent predator ("SVP") under Revised Subchapter H of the Sexual Offender Registration and Notification Act ("SORNA II").[2]

On September 11, 2023, Tucker appeared before the trial court for sentencing. The trial court and both parties agreed that the standard guideline range for rape of a child, with an offense gravity score of fourteen and Tucker's prior record score of zero, was six to twenty years, plus or minus twelve months for aggravating or mitigating circumstances. *See* N.T. Sentencing, 9/11/23, at 3-4; *see also* 18 Pa.C.S.A. § 3121(c), (e)(1); 204 Pa. Code § 303.16(a).

During the hearing, the victim's mother, grandmother, and two great aunts testified about the impact of Tucker's actions on the victim and her family. The Commonwealth argued that Tucker's crime had a significant impact on the victim and her family because he exploited their trust in him while preying upon an innocent twelve-year-old girl, causing her to become pregnant and to have an abortion, and then raping her again *after* the abortion when he became a suspect. The Commonwealth requested the maximum possible standard-range sentence of twenty to forty years' imprisonment. *See* N.T., 9/11/23, at 39. Defense counsel requested a lower end standard-range sentence, citing Tucker's: (1) guilty plea; (2) prior record

---

[2] *See* 42 Pa.C.S.A. §§ 9799.10-9799.42. Revised Subchapter H applies to offenders who committed an offense on or after December 20, 2012. *See* 42 Pa.C.S.A. § 9799.11(c).

score of zero; (3) childhood abuse; and (4) mental health issues. *See id*. at 30-33.

The trial court sentenced Tucker to a standard range term of twenty to forty years' imprisonment. Additionally, the trial court classified Tucker as a Tier III sexual offender under Revised Subchapter H, which requires lifetime registration.[3] *See id*. at 45. Tucker did not present any evidence or argument challenging his mandatory registration requirements under Revised Subchapter H. Nevertheless, the trial court noted that before the sentencing hearing, Tucker filed a motion to stay his sexual offender registration pending the Pennsylvania Supreme Court's anticipated decision following its remand in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020) ("*Torsilieri I*").[4] *See* N.T., 9/11/23, at 45. On September 18, 2023, the trial court granted Tucker's motion to stay, and on December 7, 2023, entered another order extending the stay.

_____

[3] *See* 42 Pa.C.S.A. §§ 9799.14(d)(2) (categorizing rape of a child as a Tier III offense), 9799.15(a)(3) (providing that an individual convicted of a Tier III offense shall register for life).

[4] *Torsilieri I* returned to our High Court in May 2023, where it remained pending at the time of Tucker's sentencing. As we discuss *infra*, the High Court issued its decision in *Commonwealth v. Torsilieri*, 316 A.3d 77 (Pa. 2024) ("*Torsilieri II*") while Tucker's appeal was pending and after he filed his appellate brief.

Tucker filed a timely motion to modify sentence, which the trial court denied. Tucker subsequently filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925(b).[5]

Tucker raises the following issues for our review:

1. Whether [Tucker] is required to follow the requirements of SORNA [II] for registration and reporting as a sexual offender or whether [Revised Subchapter H] is unconstitutional as is presently under review in the Pennsylvania Supreme Court in [**Torsilieri II**]?

2. Whether the trial court abused its discretion by imposing [a] sentence which was manifestly unreasonable and failed to review all appropriate factors as required by law?

Tucker's Brief at 8 (unnecessary capitalization omitted).

In Tucker's first issue, he argues that he is not subject to Revised Subchapter H because it is unconstitutional as applied to him. Tucker's constitutional challenge presents a question of law, for which our standard of review is *de novo*, and our scope of review is plenary. **See Commonwealth v. Manzano**, 237 A.3d 1175, 1178 (Pa. Super. 2020). "[T]he party

_____

[5] The trial court directed Tucker to file a Rule 1925(b) statement of errors complained of on appeal. On November 29, 2023, the trial court granted Tucker's unopposed request for an extension of time and directed him to file the statement within seven days, or by December 6, 2023. However, Tucker's counsel filed the statement one day late. Generally, the untimely filing of a court-ordered Rule 1925(b) statement results in waiver of all issues on appeal. **See Commonwealth v. Sanchez-Frometa**, 256 A.3d 440, 443 (Pa. Super. 2023). However, our Supreme Court has held that such an untimely filing, by counsel, amounts to *per se* ineffectiveness, entitling the appellant to prompt relief. **See id**. Because the trial court has authored a Rule 1925(a) opinion addressing the issues raised in Tucker's Rule 1925(b) statement, we need not remand for a new Rule 1925(b) statement, but instead similarly address his issues. **See id**.

challenging the constitutionality of a statute has a heavy burden of persuasion." *Id*. at 1180 (citation omitted). "A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution." *Commonwealth v. Villanueva-Pabon*, 304 A.3d 1210, 1214 (Pa. Super. 2023) (citations omitted).

We review the history of the *Torsilieri* decision. First, in 2018, the trial court found Revised Subchapter H unconstitutional as violative of several provisions of both the United States and Pennsylvania Constitutions. *See Torsilieri I*, 232 A.3d at 572. Specifically, the trial court found that Revised Subchapter H: (1) violated due process and impaired one's right to reputation by relying on an irrebuttable presumption that all sexual offenders pose a high risk of sexual recidivism; (2) set forth notification and registration requirements that were punitive in nature; and (3) imposed sentences more than the statutory maximum, constituted cruel and unusual punishment, and violated the separation of powers doctrines by preventing trial courts from imposing an individualized sentence. *See id*. at 581-82.

In 2020, our Supreme Court issued its decision in *Torsilieri I*, wherein it found that the defendant's evidence raised a colorable argument to debunk the settled view of sexual offender recidivation rates and the effectiveness of tier-based sexual offender registration systems underlying the General Assembly's findings as well as various decisions of the High Court and the United States Supreme Court. However, the *Torsilieri I* Court noted the lack

of opposing science in the record, as well as the fact that the record did not, at that time, provide a sufficient basis to overturn the legislative presumption. Hence, the **Torsilieri I** Court vacated the trial court's declarations that Revised Subchapter H was unconstitutional and remanded the matter to the trial court for further evidentiary proceedings regarding Revised Subchapter H's alleged irrebuttable presumption and punitive nature. **See id**. at 581, 583-84, 594. The **Torsilieri I** Court directed the trial court to consider whether the registration and notification requirements applicable to sexual offenders constituted criminal punishment, and in doing so, to address five of the seven factors set in **Kennedy v. Mendoza-Martinez**, 372 U.S. 144, (1963). Upon remand, the trial court conducted hearings at which various experts testified. The trial court then again found Revised Subchapter H was unconstitutional, in violation of the irrebuttable presumption doctrine, and punitive. **See Torsilieri II**, 316 A.3d at 80-82. The Commonwealth appealed to the Supreme Court. We note that this appeal remained pending at the time of Tucker's September 11, 2023 sentencing and April 3, 2024 filing of his appellate brief. Subsequently, on May 31, 2024, our High Court reversed the trial court and upheld the constitutionality of Subchapter H in its **Torsilieri II** decision. **See id**. at 82, 110.

Specifically, the **Torsilieri II** Court reversed **Torsilieri I**, and held that the General Assembly's presumption, memorialized in section 9799.11(a)(4), that individuals who commit sexual offenses pose a high risk of committing

additional sexual offenses, does not violate the irrebuttable presumption

doctrine:

> [The defendant]'s own experts concede that adult sexual offenders reoffend at a rate of at least three times higher than other individuals convicted of non-sexual offenses. Accordingly, rather than refuting it, the evidence **supports** the legislative presumption [in section 9799.11(a)(4)]; the evidence validates the statutory underpinnings of [Revised] Subchapter H. . . .

**Id**. at 99 (citations and footnote omitted, emphasis in original).

After considering and balancing five of the **Mendoza-Martinez** factors,[6]

the **Torsilieri II** Court further held that Revised Subchapter H is not punitive,

and does not constitute cruel and unusual punishment:

> [T]he General Assembly created a tier-based classification system organized by seriousness of the offense, which, in turn, is tied to the degree of harm caused by the crime. This is a policy-based decision vested in the legislature. Like Subchapter I,[7] we find that [Revised] Subchapter H significantly changed the original version of SORNA [I] with the apparent goal of ensuring that the

---

[6] The five **Mendoza-Martinez** factors considered by the **Torsilieri II** Court, in relation to the registration and notification requirements of Revised Subchapter H, were: (1) whether the requirements involve an affirmative disability or restraint; (2) whether they have been historically regarded as punishment; (3) whether their operation will promote the traditional aims of punishment—retribution and deterrence; (4) whether they may be rationally connected to an alternate purpose; and (5) whether they are excessive in relation to the alternative purpose. **Torsilieri II**, 316 A.3d at 83. Consistent with prior case law, the High Court determined that **Mendoza-Martinez** factor 3, a finding of scienter, and factor 5, past criminal misconduct, provided little guidance in determining whether Revised Subchapter H is punitive, and, thus, did not consider these factors. **See Torsilieri I**, 232 A.3d at 58; **see also Torsilieri II**, 316 A.3d at 83 n.8.

[7] Subchapter I addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.51-9799.75.

legislation was not punitive in nature. Indeed, [Revised] Subchapter H has a significantly less burdensome impact on the life of the offender than its predecessor. Moreover, . . . ***not only does [Revised] Subchapter H offer a valid non-punitive purpose of informing and protecting the public, but*** . . . ***[there is no] compelling evidence establishing that its registration and notification requirements*** . . . ***[are] not rationally or reasonably related to this legislative purpose***. . . .

***Id***. at 109 (footnote and emphasis added).

As stated above, Tucker filed his appellate brief before our High Court issued its ***Torsilieri II*** decision. As such, Tucker challenges the constitutionality of his lifetime Revised Subchapter H registration requirements, as a Tier III offender, relying on ***Torsilieri I***. Tucker reiterates that in ***Torsilieri I***, the trial court held that Revised Subchapter H: (1) improperly employed "an irrebuttable presumption that is not universally applicable;" (2) was cruel and unusual punishment under the Pennsylvania Constitution; (3) violated a registrant's right to their reputation; and (4) was illegal because it resulted in a sentence more than the statutory maximum. Tucker's Brief at 14-15. Tucker "believes" that, on appeal of that decision, the Pennsylvania Supreme Court would affirm the finding that Revised Subchapter H is unconstitutional, and such a ruling would free him from the onerous requirements of registration for the rest of his life. ***See id***. at 16.

As noted above, the Pennsylvania Supreme Court issued its decision in ***Torsilieri II*** in May 2024, which is directly on point and compels rejection of Tucker's constitutional challenges to Revised Subchapter H. ***See Torsilieri II***, 316 A.3d at 99-100, 108-09; ***accord Commonwealth v. Guo***, 2024 WL

3200042 (Pa. Super. 2024) (unpublished memorandum at **5-6)[8] (applying the newly issued ***Torsilieri II*** decision and rejecting appellant's "challenge to his SVP status under the irrebuttable presumption doctrine," as well as his "claim that his SVP designation under Subchapter I of SORNA II violated his right to reputation under the Pennsylvania [C]onstitution").

Furthermore, we note that Tucker did not proffer any evidence, or even argument, before the trial court in support of his constitutional challenge, let alone evidence which would be inconsistent with or go beyond that presented in ***Torsilieri I***.  His failure to present any evidence to the trial court requires denial of relief.  ***See Villanueva-Pabon***, 304 A.3d at 1217-18  (holding appellant failed to satisfy burden to prove unconstitutionality of SORNA II provisions applicable to him, where appellant made strategic decision to forego offering live testimony in hope that trial court or this Court would stay any decision on merits pending outcome of ***Torsilieri I***; and holding that without any scientific studies, appellant could not make colorable argument that recent scientific studies undermine the General Assembly's factual presumptions); ***see also Manzano***, 237 A.3d at 1182 (holding appellant failed to satisfy his burden to prove that Revised Subchapter H provisions applicable to him "clearly, palpably, and plainly" violated constitution where appellant produced no scientific evidence whatsoever to support his claims

_____

[8] Pursuant to Pa.R.A.P. 126(b)(1)-(2), unpublished non-precedential memorandum decisions of the Pennsylvania Superior Court filed after May 1, 2019, may be cited for their persuasive value.  ***See*** Pa.R.A.P. 126(b)(1)-(2).

that underlying legislative policy infringes on appellant's rights; rather, appellant simply relied on trial court's initial decision in ***Torsilieri I*** declaring statute as unconstitutional in attempt to persuade trial court in his case to reach same conclusion); ***Guo***, 2024 WL 3200042 (unpublished memorandum at *7) (holding that appellant's failure to request an evidentiary hearing or present evidence to the trial court in support of his constitutional challenge was reason enough to deny relief).  Thus, Tucker is due no relief on his first issue.[9]

In Tucker's second issue, he challenges the discretionary aspects of his sentence,[10] from which there is no automatic right to appeal.  ***See Commonwealth v. Mastromarino***, 2 A.3d 581, 585 (Pa. Super. 2010). Instead, an appellant challenging the discretionary aspects of his sentence

---

[9] The trial court found Tucker's issue regarding the constitutionality of his Revised Subchapter H registration requirement was not ripe for review, concluding that he cannot raise a valid claim due to the stay of his mandatory registration requirements.  The trial court reasoned that once the stay ends, Tucker can pursue his constitutional claim.  However, we need not rely on the trial court's reasoning and may affirm on any valid basis appearing of record. ***See Commonwealth v. Katona***, 191 A.3d 8, 16 (Pa. Super. 2018) (*en banc*) (stating that "we may affirm if there is any basis on the record to support the trial court's action, even if we rely on a different basis").

[10] Tucker may challenge the discretionary aspects of his sentence on appeal since the parties did not bargain for a specific sentence when negotiating the guilty plea. ***See Commonwealth v. Heaster***, 171 A.3d 268, 271 (Pa. Super. 2017) (concluding that appellant could challenge the discretionary aspects of his sentence on appeal after entering a plea that negotiated a particular aspect of the sentence but did not include a sentencing agreement).

must invoke this Court's jurisdiction by satisfying a four-part test that determines:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Griffin*, 65 A.3d 932, 935-36 (Pa. Super. 2013) (some citations omitted).

The record demonstrates that Tucker filed a timely notice of appeal, a post-sentence motion, and included in his brief a separate Pa.R.A.P. 2119(f) statement in which he contends that the trial court imposed an excessive sentence and did not consider his mitigating factors.[11]  *See* Tucker's Brief at 12.[12]

This Court has held that "an excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises

---

[11] Although Tucker's post-sentence motion did not specifically state that the trial court failed to consider mitigating factors, it did list such purported factors.  *See* Motion to Modify Sentence, 9/21/23, at unnumbered 2 (averring Tucker: had no criminal history, pleaded guilty, and thus accepted responsibility for his actions; and his PSI indicated he had history of childhood abuse, abandonment, and early substance abuse).  Accordingly, we decline to find waiver of this issue.

[12] In his Rule 2119(f) statement, Tucker additionally claimed that the trial court failed to state its reasons on the record for imposing a sentence that exceeded the statutory guidelines.  However, our review of Tucker's post-sentence motion reveals that he did not raise this issue therein; thus, he has waived this claim.  *See Griffin*, 65 A.3d at 935-36; *see also* Pa.R.A.P. 302(a).

a substantial question." ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citation omitted). We therefore conclude that Tucker has raised a substantial question and will now turn to the merits of his discretionary sentencing claim.

Tucker contends that the trial court imposed an excessive sentence because it imposed the maximum possible sentence permitted for his offense. Tucker also argues that the trial court failed to consider relevant mitigating factors, including his lack of a prior or subsequent criminal history.

Our standard of review of a discretionary sentencing claim is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In [the context of sentencing], an abuse of discretion is not shown merely by an error of judgment. Rather appellant must establish by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Clemat***, 218 A.3d 944, 959 (Pa. Super. 2019) (citation omitted).

"When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1134 (Pa. Super. 2009). "We cannot re-weigh the sentencing

factors and impose our judgment in the place of the sentencing court."

***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009).

Additionally, our Supreme Court has stated:

Where [a PSI report] exist[s], we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A [PSI] report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention in engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the [PSI] report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand. . . .

***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Accordingly, when the trial court imposes a standard range sentence with the benefit of a PSI report, this Court will not consider the sentence excessive or find an abuse of the trial court's sentencing discretion. ***See Commonwealth v. Corley***, 31 A.3d 293, 298 (Pa. Super. 2011). Instead, this Court will assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. ***See id***.

As explained above, the offense gravity score for rape of a child is fourteen, and Tucker's prior record score was zero. ***See*** N.T., 9/11/23, at 4. The sentencing guidelines provided a standard range sentence of six years to

the statutory limit of twenty years, plus or minus twelve months for aggravating or mitigating circumstances. **See** 204 Pa. Code § 303.16(a). Tucker's plea was open, and the parties agreed the trial court could impose any term up to the statutory maximum of forty years. **See** N.T., Guilty Plea, 5/30/23, at 2. Tucker's sentence of twenty to forty years in a state correctional institution, which is the statutory maximum sentence, fell within the standard range of the sentencing guidelines.

During the sentencing hearing, the trial court stated that it had the benefit of a PSI report, as well as the sexual offender assessment report which found that Tucker did not meet the criteria for classification as an SVP. **See** N.T., 9/11/23, at 39. Furthermore, before imposing Tucker's standard range sentence, the trial court stated all the factors that it considered:

> . . . While it is certainly regrettable, Mr. Tucker, about the level of abuse you had . . . in fact, suffered as a child and any mental health issues you have[,] that sort of raises the question as to why you didn't take steps to prevent you [from] inflicting the same kind of damage on another person. So the acts in this case [were] so monstrous that they damaged and inflicted on not only the victim but also her family . . . .
>
> Even going as far as either planting the idea with the victim to blame a schoolmate for the sexual assault or directly conveying that as a lie that she should offer [*sic*].
>
> In the PSI, you said, "You had nothing to do with that." But[,] the investigation would seem to show otherwise. And[,] compounding everything that even after this young girl had an abortion, you sexually assaulted her again by your own admission. . . .
>
> As far as I'm concerned, Mr. Tucker, whatever leniency should be offered to you came about from this plea that you didn't

- 14 -

have to face any other charges or to which you would have to be held accountable [*sic*]. . . .

***Id***. at 39-40.

Upon review, we determine that the trial court did not abuse its discretion when imposing Tucker's sentence. The record demonstrates that the trial court had the benefit of a PSI report and stated its reasons for imposing Tucker's standard range twenty-to-forty-year sentence during the sentencing hearing. ***See Corley***, 31 A.3d at 298. Thus, because Tucker has not shown that the trial court abused its discretion, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/28/2024