2025 PA Super 26

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL ANTHONY BALDASSANO | : | |
| | : | |
| Appellant | : | No. 298 MDA 2024 |

Appeal from the Order Entered February 7, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000734-2019

BEFORE:  LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

OPINION BY BECK, J.:                                    **FILED: JANUARY 29, 2025**

Michael Anthony Baldassano ("Baldassano") appeals from the order entered by the Lebanon County Court of Common Pleas ("trial court") revoking his parole and recommitting him to serve the balance of his original sentence.[1] Baldassano argues that the trial court wrongly revoked his parole for violating a condition of his supervision to which he was no longer subject. Following our careful review of the record, we agree that the trial court erred. We therefore vacate the order revoking his parole and recommitting him.

---

[1] Baldassano purported to appeal from the February 20, 2024 order granting in part and denying in part his motion for reconsideration. However, Baldassano's appeal lies properly from the order on February 7, 2024, revoking his parole and recommitting him, and we have amended the caption accordingly. **See Commonwealth v. Duffy**, 143 A.3d 940, 944 (Pa. Super. 2016) (holding that the thirty-day appeal period following recommitment from the revocation of parole "commences to run when sentence is imposed at the hearing"). We note that because Baldassano filed his notice of appeal within thirty days of February 7, 2024, it was timely. **See** Pa.R.A.P. 903(a).

A prior panel of this Court summarized the factual and procedural histories of this case as follows:

> [Baldassano] and the victim, E.B., became friends while attending Temple University in the mid-2000s and working together in the library. At some point, [Baldassano] wanted the relationship to become romantic. E.B. tried gently to rebuff him but eventually told him directly that she was not interested in that sort of relationship with him. After E.B. graduated in 2008, she went once with [Baldassano] to a baseball game as a friend, but then moved away from the area. E.B. did not communicate with [Baldassano] after that. In 2016, E.B. moved to Lebanon County where she lived with her two children and her husband.
>
> In May 2016, [Baldassano] began calling E.B.'s cell phone in the early morning hours from a number with no caller ID. Frequently, he would simply hang up. However, over the next two years, [Baldassano] left approximately 25 voicemail messages with threatening and foul language in which he indicated he knew her address, made comments about her children and husband, and threatened to kill her. E.B. recognized [Baldassano]'s voice. In addition to telephone communications, [Baldassano] posted pictures of himself with E.B. at the 2008 baseball game on social media accounts that he had set up in E.B.'s name.
>
> E.B. contacted the Annville Township Police Department twice to alert them to [Baldassano]'s stalking and harassment occurring by telephone and on social media, but police officers told her the nature of the harassment and threats was not enough for a criminal investigation. Becoming increasingly fearful, she began to log the telephone calls and save [Baldassano]'s voicemails. On her birthday in August of 2018, E.B. received approximately 80 hang up calls from a blocked number that police later determined was [Baldassano]'s cell phone number.
>
> In September 2018, E.B. again contacted the police department. After an investigation, during which Officer Guy Robinson, Sr., spoke with [Baldassano] regarding his behavior over the previous two years, the Commonwealth charged [Baldassano] with one count each of [t]erroristic [t]hreats and [s]talking, and three counts of [h]arassment.

* * *

- 2 -

> [Following Baldassano's trial], [t]he jury found [him] guilty of the above crimes. On March 11, 2020, the court sentenced him to a term of thirty days' to four years' incarceration. The court directed that [Baldassano] be immediately paroled at the expiration of his minimum sentence and ordered [him] to have no contact, direct or indirect, with E.B. or her family.

*Commonwealth v. Baldassano*, 1040 MDA 2020, 2021 WL 2580633, at *1–2 (Pa. Super. June 23, 2021) (non-precedential decision).

Of relevance to this appeal, Baldassano's parole included following the special conditions:

> 1.    [Baldassano] shall undergo a drug and alcohol evaluation and comply with all recommendations.
>
> 2.    [Baldassano] shall continue to undergo mental health treatment as directed by his mental health provider.
>
> 3.    The first two years of [Baldassano]'s supervision is to be on active supervision. The second two years of [Baldassano]'s supervision is to be on inactive supervision. The purpose of the second two years of [Baldassano]'s supervision is to ensure that [he] continues not to have contact with the victim. However, it shall not be necessary during the second two years of supervision for [Baldassano] to pay supervision fees or otherwise comply with the rules and regulations of the Lebanon County Probation Department.

Sentencing Order, 3/11/2020, at 3.

On January 12, 2024, the Lebanon County Department of Probation filed a petition alleging that Baldassano violated the terms of his parole. The Department of Probation alleged that Baldassano violated several of its rules and regulations, including testing positive for controlled substances, possessing controlled substances, and recently receiving new criminal

charges. *See* Petition, 1/12/2024, ¶ 4. On January 26, 2024, Baldassano filed a motion to dismiss the Department of Probation's petition. Baldassano argued that his alleged parole violations occurred more than two years after the imposition of his original sentence, during which time he was on "inactive supervision" and not subject to the rules and regulations of the Department of Probation. Motion to Dismiss, 1/26/2024, ¶¶ 4-12. Baldassano asserted that the only condition of his parole during the second years of his supervision was that he have no contact with E.B. and that he complied with that condition. *See id.*

On February 7, 2024, the trial court held a *Gagnon II* hearing.[2] At the hearing, the Department asked to withdraw its allegations that Baldassano violated his parole by testing positive for controlled substances and possessing controlled substances and proceed with its allegation that he violated his parole by obtaining new criminal charges. N.T., 2/7/2024, at 5. The trial court therefore granted Baldassano's motion to dismiss the allegations that he tested positive for controlled substances and possessed controlled substances.

---

[2] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). In a *Gagnon I* hearing, the Commonwealth must show probable cause that the defendant committed a parole violation. *See Commonwealth v. Ferguson*, 761 A.2d 613, 617 (Pa. Super. 2000) (explaining differences between *Gagnon I* and *Gagnon II* hearings). In a *Gagnon II* hearing, the trial court then determines if the defendant violated parole and, if so, the sentence to impose. *See id.* There was no *Gagnon I* hearing in this case and it is unclear from the record whether Baldassano waived his right to such a hearing. Nonetheless, Baldassano does not pursue this issue on appeal, and we therefore do not address it in this decision.

*Id.* The Commonwealth and the Department of Probation thus proceeded on the sole allegation that Baldassano violated his parole by obtaining new criminal charges.

At the conclusion of the hearing, the trial court found Baldassano to have violated the conditions of his parole. *Id.* at 51. The court stated that it found Baldassano in violation of his parole "for the reasons outlined, and specifically relative to this for his new charges." *Id.* at 51-52. The court recommitted him to serve the balance of his original sentence and made him eligible for parole after eighteen months.

On February 14, 2024, Baldassano filed a motion for reconsideration, which the trial court granted in part on February 20, 2024. Although the trial court's grant of reconsideration made minor adjustments to Baldassano's sentence, including finding him RRRI-eligible if he was to serve any portion of his sentence in state prison, the court did not alter his term of incarceration. Baldassano timely appealed to this Court and presents the following issue for review: "Did the trial court error [sic], commit an abuse of discretion, and/or erroneously deny [Baldassano]'s motion to dismiss on the original filing and for his motion for reconsideration?" Baldassano's Brief at 2 (unnecessary capitalization omitted).[3]

---

[3] We note with disapproval that the Commonwealth did not file an appellee's brief in this matter.

Prior to addressing the issue Baldassano raises on appeal, we must determine whether he properly preserved it for our review. On March 1, 2024, the trial court ordered Baldassano to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) within twenty-one days, informing him that his failure to comply with the order would result in waiver of the issues he sought to raise on appeal. In the appendix of his appellate brief, Baldassano included a time-stamped copy of his Rule 1925(b) statement, which he filed on June 18, 2024. **See** Baldassano's Brief at A.5. Baldassano's counsel claims that the untimeliness of the Rule 1925(b) statement was the result of Baldassano's March 5, 2024, petition to proceed pro se, which the trial court ultimately denied following a **Grazier**[4] hearing. **See** Baldassano's Brief at 5-6.

Initially, therefore, we must ascertain whether Baldassano's failure to timely file his Rule 1925(b) concise statement has waived the issue he has raised for our review. "This Court has held that both the complete failure to file the 1925(b) statement ... and the untimely filing of a 1925(b) statement is per se ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal." **Commonwealth v. Sanchez-Frometa**, 256 A.3d 440, 442-43 (Pa. Super. 2021) (quotation marks, citation, and brackets omitted). "While these

---

[4] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

circumstances often require a remand, where the trial court addresses the issues raised in an untimely Rule 1925(b) statement, we need not remand but may address the issues on their merits." ***Id.*** at 443 (quotation marks, citation, and brackets omitted).

Here, we determine that Baldassano's counsel was per se ineffective in failing to file a timely Rule 1925(b) statement. Though the trial court's Rule 1925(a) opinion mentioned Baldassano's failure to comply with Rule 1925(b), it nonetheless addressed the issue he now seeks to raise on appeal. ***See*** Trial Court Opinion, 3/11/2024, at 2-4. Accordingly, because we can glean from the record why the trial court found Baldassano in violation of his parole, we need not remand this case for the preparation of a supplemental Rule 1925(a) opinion and do not find the claim before this Court waived. ***See Sanchez-Frometa***, 256 A.3d at 443. We therefore proceed to review the merits of Baldassano's appeal.

Baldassano argues that the trial court erred in finding him in violation of his parole. ***See*** Baldassano's Brief at 7-10. Specifically, Baldassano contends that his alleged parole violation, i.e., obtaining new criminal charges, occurred more than two years after the imposition of his original sentence, during which time he was on "inactive supervision." ***Id.*** at 9-10. Although he concedes that obtaining new criminal charges violated the rules and regulations of the Lebanon County Department of Probation, he contends that he was explicitly not subject to those rules during the last two years of his

supervision and thus, the trial court could not find him in violation of his parole on that basis. *Id.*

In reviewing a challenge to the revocation of parole, this Court has stated:

> [T]he purposes of a court's parole-revocation hearing—the revocation court's tasks—are to determine whether the parolee violated parole and, if so, whether parole remains a viable means of rehabilitating the defendant and deterring future antisocial conduct, or whether revocation, and thus recommitment, are in order. The Commonwealth must prove the violation by a preponderance of the evidence and, once it does so, the decision to revoke parole is a matter for the court's discretion

*Commonwealth v. Kalichak*, 943 A.2d 285, 290-91 (Pa. Super. 2008) (citations omitted). "Following parole revocation and recommitment, the proper issue on appeal is whether the revocation court erred, as a matter of law, in deciding to revoke parole and, therefore, to recommit the defendant to confinement." *Id.* at 291.

Importantly, our Supreme Court has stated that "parole may be revoked only after a court finds the defendant has violated an actual condition for which he had notice." *Commonwealth v. Koger*, 295 A.3d 699, 707 (Pa. 2023); *see also* Pa.R.Crim.P. 708(B)(2) ("the judge shall not revoke … parole … unless there has been ... a finding of record that the defendant violated a condition of" it).

The record reflects that Baldassano was to serve his original term of incarceration at the Lebanon County Correctional Facility and his period of parole under the supervision of the Lebanon County Department of Probation.

Sentencing Order, 3/11/2020, at 2. In **Koger**, our Supreme Court stated that the Pennsylvania Department of Probation and Parole does not "have authority in county parole cases to provide general rules of parole outside that of the court." **Koger**, 295 A.3d at 710 (citation omitted). The Supreme Court explained that "[u]nlike with county parole cases, the Prisons and Parole Code, 61 Pa.C.S. §§ 101-7301, contains far more detailed procedures regarding state parole." **Id.** The Court further explained that where a case involves a county sentence and thus, county parole, "the sentencing judge was the one with jurisdiction over his parole." **Id.** at 711 (citing 42 Pa.C.S. § 9775 (where the sentencing court grants county parole, "parole shall be without supervision by the board"); 61 Pa.C.S. § 6132(a)(2)(ii) ("powers and duties" of the Pennsylvania Department of Probation and Parole "shall not extend … to those persons committed to county confinement")).[5]

Thus, with respect to the conditions of his parole, as his original sentence was a county sentence with county parole and there was no special order directing supervision by the Pennsylvania Department of Probation and Parole, Baldassano would generally only be subject to the special conditions

_____

[5] The **Koger** Court noted that there is an exception to this rule that permits a sentencing court "by special order [to] direct supervision by the [board], in which case the parole case shall be known as a special case and the authority of the [board] with regard thereto shall be the same as provided in this chapter." **Koger**, 295 A.2d at 711 (brackets in original) (quoting 61 Pa.C.S. § 6171(a)(4)). The record in the case at bar reflects that the trial court did not enter such an order.

set forth by the sentencing court and the general rules and regulations of Lebanon County Department of Probation during his supervision. **See Koger**, 295 A.3d at 710-11; **see also** 61 Pa.C.S. §§ 6132(a)(2)(ii), 6171(a)(4). In this case, however, Baldassano's original sentencing order expressly stated that for the final two years of his supervision, he was on "inactive supervision" and that "it shall not be necessary … to pay supervision fees or otherwise comply with the rules and regulations of the Lebanon County Probation Department." Sentencing Order, 3/11/2020, at 3. Thus, pursuant to the plain language of the sentencing order, for the last two years of Baldassano's period of parole, he was subject solely to the special conditions contained in his sentencing order—compliance with a drug and alcohol evaluation and any treatment recommendations; compliance with mental health treatment; and no contact with E.B.

The record further reflects that the trial court granted Baldassano's motion to dismiss the allegations that he tested positive for controlled substances and possessed controlled substances allegations, thus leaving the claim related to the new criminal charges as the sole allegation that Baldassano had violated his parole. There is no question that obtaining new criminal charges would be a violation of Rule 4 of the Lebanon County Department of Probation. **See** Parole Violation Order, 2/7/2024, Appendix (Lebanon County General Conditions of Probation/Parole) 4. There is likewise no dispute, however, that Baldassano obtained these new criminal charges

during the second two years of his supervision—the time during which his original sentencing order expressly stated that he was not subject to the rules and regulations of the Lebanon County Department of Probation. *See* Sentencing Order, 3/11/2020, at 3; *see also* Motion to Dismiss, 1/26/2024, ¶¶ 4-12. Therefore, because the basis of the revocation of Baldassano's parole was the violation of one of the rules of the Lebanon County Department of Probation, i.e., obtaining new criminal charges, and (per his original sentencing order) he was not subject to those rules at time he committed the violation, the trial court impermissibly revoked his parole based on the violation of a condition to which he was not subject, and thus, of which he was not aware, at that time. *See Koger*, 295 A.3d 699, 707. We therefore conclude that the trial court erred in revoking his parole.[6]

As stated above, we recognize that ordinarily, the commission of a crime is grounds for revoking parole. *See* Parole Violation Order, 2/7/2024, Appendix (Lebanon County General Conditions of Probation/Parole) 4 (requiring parolees to comply with all municipal, county, state, and federal criminal laws). Additionally, if the trial court had confined Baldassano to a term of incarceration at a state correctional institution or issued a special order directing supervision by the Pennsylvania Department of Probation and Parole,

---

[6] Indeed, the trial court recognized that this outcome was possible. *See* Trial Court Opinion, 3/11/2024, at 3 (stating that if the trial court "incorrectly determined that a new criminal offense when on parole, but unsupervised is a violation; the sentence here should be dismissed" on appeal).

it could have revoked his parole for committing a crime. *See* 61 Pa.C.S. § 6138(a)(1) (stating that the Pennsylvania Department of Probation and Parole "may, at its discretion, revoke the parole of a paroled offender if the offender, during the period of parole … commits a crime punishable by imprisonment"). Baldassano, however, was neither subject to supervision of the Pennsylvania Department of Probation and Parole nor bound to comply with the parole rules and regulations set forth by Lebanon County.

Thus, under the extraordinarily unique facts and circumstances of this case, in which Baldassano was under the supervision of county parole and his original sentencing order stated that he was not subject to the rules and regulations of the Lebanon County Department of Probation during the second two years of his supervision, the only manner in which he could have violated his parole during that time was if he violated one of the three special conditions set forth in his original sentencing order.[7] *See id.*; *see also*

---

[7] We note that there was ample evidence to revoke Baldassano's parole on the basis that he violated the first two special conditions of his parole—that he "shall undergo a drug and alcohol evaluation and comply with all recommendations" and that he "shall continue to undergo mental health treatment as directed by his mental health provider." *See* Sentencing Order, 3/11/2020, at 3. Neither of these two special conditions were limited to the first two years of his supervision. *See id.* The transcript of the *Gagnon II* hearing is replete with evidence that he has failed to comply with either requirement. *See* N.T., 2/7/2024, at 25-40. Nonetheless, the Commonwealth and the Lebanon County Department of Probation and Parole chose only to proceed on the allegation that he violated his parole by committing a new crime, and therefore, his violation of these two special conditions does not provide a basis for our affirmance of the trial court's decision.

Sentencing Order, 3/11/2020, at 3. As the Commonwealth failed to proceed on an allegation that he violated any of the three special conditions, we must therefore conclude that the trial court erred in revoking his parole.

Based on the foregoing, we are constrained to vacate the order revoking Baldassano's parole and recommitting him to serve the balance of his original sentence, and we remand this matter to the trial court for proceedings consistent with this decision.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/29/2025</u>